United States District Court
Southern District of Texas
FILED

JAN 1 1 2000

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TERRY A. CANALES AND | § | |
| RACHEL E. CANALES | § | |
| | § | C.A. NO. **C-00-012** |
| VS. | § | |
| | § | |
| KOCH PIPELINE COMPANY, L.P., KOCH | § | |
| PETROLEUM GROUP, KOCH GATHERING | § | |
| SYSTEMS, INC., AFC LEASE SERVICE, | § | |
| INC., ALLEN YEATS, HECTOR S. LOPEZ | § | Removed from the 229th District Court |
| AND GLORIA LOPEZ | § | of Duval County, Texas |

## KOCH DEFENDANTS' NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Defendants, Koch Pipeline Company, L.P., Koch Petroleum Group, L.P. erroneously

named by Plaintiffs as Koch Petroleum Group, and Koch Gathering Systems, Inc. ("Koch

Defendants"), file this Notice of Removal and say:

1.      Introduction

        This is a duplicate of a previous suit filed in state court and removed to federal

court, where it is pending before Judge Hayden W. Head, Jr.

2.      Plaintiff, Rachel E. Canales originally filed suit on these claims on April 14,

1999, in the state district court of Duval County naming only Koch Industries, Inc. as a

Defendant regarding the subject matter of this suit.[1]  Koch removed the case to the United States

District Court, where it is pending before the Honorable Hayden W. Head, Jr.

---

[1]Cause No. DC-99-104, *Rachel Canales v. Koch Industries, Inc.*

---

Koch Defendants' Notice of Removal - Page 1
H \office\wpwin\wpdocs\TRIAL\KOCH\Canales-#3\Pldgs\REMOVAL.wpd

(Case No. CA-C-99-228). A copy of the original complaint is attached at **Exhibit 1** for the purpose of showing that the lawsuits involve the same claims, but Plaintiffs have joined in this case additional parties which they are also attempting to join in the pending federal suit.

3.     Since the removal of CA-C-99-228 to Judge Head's Court, Plaintiffs have proposed numerous theories about why they want the case to be remanded to state court. Plaintiffs sought to join in Case No. CA-C-99-228 all the additional parties named in the instant suit.

4.     In Case No. CA-C-99-228, Judge Head ordered the parties on November 29, 1999 to conduct limited discovery and to submit position statements on the issues of jurisdiction. **Exhibit 2**, at pgs. 53-56. Judge Head also made several comments from the bench regarding jurisdiction and the likelihood of permitting joinder of parties like AFC. **Exhibit 2** at p. 47, lines 12-23; p. 52, lines 5-25; p. 53, line 1. Judge Head has not rules on those issues. A week after that hearing, Plaintiffs went back to Duval County and filed the same suit. This action styled Cause No. DC-99-465, *Terry A. Canales and Rachel E. Canales v. Koch Pipeline Company, L.P., Koch Petroleum Group, Koch Gathering Systems, Inc., AFC Lease Service, Inc., Allen Yeats, Hector S. Lopez and Gloria Lopez*, was filed in the 229th District Court of Duval County, Texas.

5.     **Federal Jurisdiction**.

        a.     **Diversity**. This Court has original jurisdiction over this civil action under 28 U.S.C. Sec. 1332. The case may be removed to this Court under 28 U.S.C. Section 1441(b). The only non-diverse parties (AFC Lease Service Inc., Allen Yeats, Hector S. Lopez and Gloria

Lopez) have been joined solely to defeat diversity and therefore their presence in the suit does not defeat diversity.

b.      The Court also has jurisdiction to enforce its orders pursuant to, among other things, the All Writs Statute, 28 U.S.C. § 1651(a) and the re-litigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283, which permits a federal court to enjoin state court litigation of issues or claims already presented to it and decided by it, in order to protect its judgments. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147; 108 S.Ct. 1684, 1689 (1988); *Deus v. Allstate*, 15 F.3d 506, 524-25 (5th Cir. 1994).

6.      **Complete Diversity of Citizenship.**

a.      Plaintiffs are citizens of Texas.  None of the Koch defendants is a citizen of Texas.

b.      Before Plaintiffs filed this suit, Koch Gathering Systems, Inc., a Kansas corporation, merged into Koch Pipelines, Inc., a Delaware corporation.  Koch Gathering Systems, Inc. was a Kansas corporation with its principal place of business in Wichita, Kansas. Koch Pipeline, Inc. was a Delaware corporation with its principal place of business in Wichita, Kansas.

c.      Before Plaintiffs filed this suit, Koch Pipelines, Inc. merged into Koch Pipeline Company, L.P.  At all relevant times, Koch Pipeline Company, L.P. was a Delaware limited partnership with its principal place of business in Wichita, Kansas.  All of its partners are not citizens of Texas; to wit: its general partner is KPL/GP, Inc., incorporated in Delaware, with its principal place of business in Wichita, Kansas.  Its limited partner is KPL/LP, Inc., originally

incorporated in Delaware, with its principal place of business in Wichita, Kansas. (See *Exhibit 3*) Consequently, Koch Pipeline Company, L.P. consists **only** of citizens not of Texas; **none** is non-diverse (i.e. a Texas citizen).

        d.     Koch Petroleum Group, L.P. is a Delaware limited partnership with its principal place of business in Wichita, Kansas. **All** of its partners are not Texas citizens; **none** of its partners are incorporated or has a principal place of business in Texas; to wit: its general partner is KPG/GP, Inc., incorporated in Delaware, with its principal place of business in Wichita, Kansas. Its limited partner is KPG/LP, Inc., originally incorporated in Delaware, with its principal place of business in Wichita, Kansas. (See *Exhibit 4*)

        e.     Although Hector S. Lopez, Gloria Lopez, AFC Lease Service, and Allen Yeats are Texas citizens, their presence in this case does not defeat diversity jurisdiction because the Lopezes are not defendants for diversity purposes and all these parties were joined merely to defeat diversity. For the same reasons discussed in CA-C-99-228, they are not required to "join" in removal. Still Yeats and AFC **join** in the removal. The Lopezes' counsel, Ron Simank, was asked on January 11, 2000, whether the Lopezes would join and he said he did not know. He has not informed Koch of whether the Lopezes will join or not.

With regard to Hector and Gloria Lopez; the individual Defendants are **not** proper party Defendants because: (1) they are not defendants; (2) Plaintiff's complaint establishes no cause of action against the Lopezes; and (3) there is no reasonable basis for imposing liability upon the Lopezes based on the admissions of the Plaintiffs and the facts alleged in the complaint. Judge Head has ordered the parties to conduct discovery on this issue as it pertains to jurisdiction.

*Exhibit 2* at p. 46, lines 3-10.

      f.     Although AFC Lease Service, Inc. is a Texas corporation, its presence in this case does not defeat diversity jurisdiction because it was improperly joined in an effort to defeat diversity. Likewise, Allan Yeats, the owner of AFC, is improperly joined merely to defeat diversity. This issue also has been addressed by Judge Head, in Case No. CA-C-99-228. Neither Defendant is a proper party Defendant because Plaintiffs' claims, if any, against these Defendants are time-barred and these parties are unnecessary because Koch stipulates that Koch hired AFC to dig the pipeline and would be liable for damages caused by AFC, see *Exhibit 2* at p. 52, lines 5-25. Moreover, any claim would be based on acts or omissions allegedly occurring in April or May of 1997 (see *Exhibit 1*) – almost three years before Plaintiffs filed this suit and at the **very least** at least three months after Plaintiffs admitted they learned of AFC's/Yeats' involvement in the events made the basis of Plaintiffs' claims in this lawsuit. Such a useless, time-barred claim would serve only to defeat diversity (if permitted).

      7.     **Removal is Timely.** This Notice of Removal is filed within thirty (30) days after service of the initial pleading showing that the case is removable. Therefore, removal is timely.

      8.     **Amount-in Controversy.** Plaintiffs have admitted in Court (*Exhibit 2* at p. 14, lines 6-8) and in response to Requests for Admission in Cause No. DC-99-104 (*Exhibit 5*), that the amount in controversy far exceeds the statutory minimum of $75,000.00.

      9.     **Joinder in Removal.** All parties properly aligned as Defendants (e.g. all except the Lopezes who have not stated a position one way or another) join in this removal.

      10.    Copies of all documents to be filed with the Notice of Removal are attached.

Respectfully submitted,

Travis A. Pearson
Kansas Bar No. 16076
KOCH INDUSTRIES, INC.
P.O. Box 2256
Wichita, KS 67201-2256
Telephone: (316) 828-8594
FAX:  (316) 828-4780
and
Gene R. Ward
State Bar No. 20841500
Federal I.D. No. 7645
Lynette M. Frederick
State Bar No. 12909300
Federal I.D. No. 15439
HORNBLOWER, MANNING & WARD
Professional Corporation
P.O. Box 2728
Corpus Christi, TX 78403-2728
Telephone:  (361) 888-8041
FAX:  (361) 888-8222


By _Travis A Pearson by GRW_
ATTORNEYS FOR DEFENDANTS, KOCH PIPELINE
COMPANY, L.P., KOCH PETROLEUM GROUP, L.P.
AND KOCH GATHERING SYSTEMS, INC.


## CERTIFICATE OF SERVICE


I certify that on January __11__, 2000, a complete and correct copy of **Koch Defendants'**
**Notice of Removal** was served on each party by delivery to the following attorney(s) of record in
the manner indicated below:

**VIA CM/RRR # Z 186 823 016**
Mr. John C. Lemon
Lemon & Gonzalez-Lemon, L.L.P.
520 East Second Street
Alice, TX 78332-4810

**VIA CM/RRR # Z 186 823 017**
Mr. Allen Yeats, Pro Se
P.O. Box 776
Sinton, TX 78387


**VIA CM/RRR # Z 186 823 018**
Mr. Allen Yeats
AFC Lease Services, Inc., Pro Se
P.O. Box 776
Sinton, TX 78387


Gene R. Ward

1

FILED AT 3:20 O'CLOCK P. M

APR 1 4 1999

R. BARTON, CLERK
DISTRICT COURT DUVAL COUNTY TEXAS
BY _____ DEPUTY

CAUSE NO. _QC-99-104_

RACHEL E. CANALES          }          IN THE DISTRICT COURT
                          }
VS.                       }          229TH JUDICIAL DISTRICT
                          }
KOCH INDUSTRIES, INC.     }          DUVAL COUNTY, TEXAS

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **RACHEL E. CANALES**, hereinafter referred to as "Plaintiff," whose address is two and one-half (2-1/2) miles Northeast of the City of Premont, Jim Wells County, Texas, off County Road 421. Her mailing address is Post Office Box 730, Premont, Texas 78375. The Plaintiff complains of **KOCH INDUSTRIES, INC.**, hereinafter referred to as "Defendant," whose mailing address is Post Office Box 2256, Wichita, Kansas 67201-2256. For cause of action, the Plaintiff would respectfully show unto the court the following, to wit:

I.

The Defendant is a Kansas corporation, authorized to do business in the State of Texas. It may be cited to appear by serving **C.T. CORPORATION SYSTEMS**, at 350 North St. Paul Street, Dallas, Dallas County, Texas 75201, its authorized agent for service of process.

II.

**HECTOR S. LOPEZ** and wife, **GLORIA LOPEZ** are necessary parties to this suit for the reason that they are joint owners of the land that is the subject of this suit.

III.

**HECTOR S. LOPEZ** and wife, **GLORIA LOPEZ** are residents of Jim Wells County, Texas, and can both be served by mail at Post Office Box 2226, Alice, Jim Wells County, Texas.

IV.

The Plaintiff, together with **HECTOR S. LOPEZ** and wife, **GLORIA LOPEZ** are joint owners, as tenants in common, of approximately three thousand two hundred (3,200) acres of land in Duval County, Texas, situated approximately eight (8) miles North of the City of Benavides,

Duval County, Texas. The above-referenced acreage is hereinafter referred to as the "property."

### V.

That the Defendant has entered upon the property and installed a pipeline claiming an easement on the property for such purpose.

### VI.

That the Defendant caused damages to the surface of the land.

### VII.

That the Plaintiff believes and has reason to believe that the Defendant does not have a valid easement across the property and are therefore trespassing.

### VIII.

That as a result of Defendant's conduct the Plaintiff has sustained damages in an amount within the jurisdiction of this court.

### IX.

That Defendant's claimed easement constitutes a cloud on Plaintiff's title.

## Prayer

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff prays that the Defendant, together with **HECTOR S. LOPEZ** and wife, **GLORIA LOPEZ,** be cited to appear and answer as required by law; and, that upon final hearing, the Plaintiff have judgment of the court:

1.    For damages;

2.    For pre-judgment and post-judgment interest;

3.    Enjoining the Defendant from trespassing;

4.    Removing the cloud to Plaintiff's title; and,

For such other and further relief, both general and special, at law or in equity, to which the Plaintiff may show herself justly entitled.

Respectfully submitted,

Rachel E. Canales, Pro Se
Post Office Box 730
Premont, Texas 78375
Telephone (361) 348-2074
Facsimile (361) 348-3909

2

RECEIVED

DEC 2 2 1999



IN THE UNITED-STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

DEC 2 2 1999

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| RACHEL E. CANALES, | § | CIVIL ACTION |
| | § | |
| PLAINTIFF, | § | CA-C-99-228 |
| | § | |
| VS. | § | CORPUS CHRISTI, TEXAS |
| | § | NOVEMBER 29, 1999 |
| KOCH INDUSTRIES, INC., | § | 1:43 P.M. |
| | § | |
| DEFENDANT. | § | |
| .........................§ | | |

## TRANSCRIPT OF SCHEDULING CONFERENCE

BEFORE THE HONORABLE HAYDEN W. HEAD, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES FOR:

THE PLAINTIFF:          MR. JOHN C. LEMON
                        LEMON & GONZALEZ-LEMON
                        520 E. SECOND STREET
                        ALICE, TEXAS 78332

THE DEFENDANT:          MR. TRAVIS A. PEARSON
                        KOCH INDUSTRIES, INC.
                        LEGAL DEPARTMENT
                        4111 E. 37TH STREET NORTH
                        WICHITA, KANSAS 67220

(APPEARANCES CONTINUED ON PAGE 2)

THE COURT RECORDER:     MS. GENAY ROGAN

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:
GARCIA SERVICES CORP., 710 BUFFALO ST., STE 210A
CORPUS CHRISTI, TEXAS 78401, (361) 882-5753

APPEARANCES FOR:   (Continued)

THE DEFENDANT:                    MR. GENE R. WARD
                                 HORNBLOWER, MANNING & WARD
                                 P.O. BOX 2728
                                 CORPUS CHRISTI, TEXAS 78403

HECTOR AND GLORIA LOPEZ:         MR. RONALD A. SIMANK
                                 SCHAUER, SIMANK & LEDBETTER
                                 615 UPPER N. BROADWAY, STE 2000
                                 CORPUS CHRISTI, TEXAS 78477

ALSO PRESENT:                    MR. TERRY A. CANALES
                                 MR. HECTOR LOPEZ

1    (The proceedings began at 1:43 p.m.)

2    (The case was called)

3        THE CLERK:  Plaintiffs please come forward.

4   Plaintiff's table here and defendant's table here.  May we

5   have appearances, please?

6        MR. SIMANK:  Ron Simank on behalf of Hector and

7   Gloria Lopez.

8        MR. LEMON:  John Lemon on behalf of Rachel E.

9   Canales.

10       MR. PEARSON:  Your Honor, Travis Pearson and Gene

11  Ward on behalf of Koch Industries, Inc.

12       THE COURT:  Aren't you at the wrong table, Mr.

13  Simank?

14       MR. SIMANK:  Your Honor, I don't think so.  I think

15  I am the defendant in this case.

16       THE COURT:  Maybe we ought to talk about that.  Tell

17  me why Mr. Lopez is a defendant.

18       MR. SIMANK:  Well --

19       THE COURT:  Other than the fact he's been named.

20       MR. SIMANK:  It has directly to do with being a

21  joint owner of this property, but my understanding of part of

22  the allegations that are in this lawsuit is that the premise

23  of Koch Industries coming onto the property was allegedly

24  permission that Mr. Lopez granted to them to do so.

25       THE COURT:  He would have that right?

1          MR. SIMANK:  That's a good question whether he does

2   in the first place.

3          THE COURT:  Is he a co-tenant?

4          MR. SIMANK:  He's a co-tenant.

5          THE COURT:  Why wouldn't he?

6          MR. SIMANK:  Well, but can he bind the other co-

7   tenant in granting that permission?

8          THE COURT:  I don't know, maybe not, but why does

9   that make him a defendant?

10          MR. SIMANK:  Well, if, and again Mr. Lopez disputes

11   this but if that occurred, then obviously he wasn't speaking

12   for the other co-tenant, he could be liable for damages.

13          THE COURT:  Has your client been sued for damages?

14          MR. SIMANK:  In my -- yes, I've looked at the

15   pleadings --

16          THE COURT:  Let's look at the complaint.

17          MR. SIMANK:  Sure.

18          THE COURT:  And see what the theories are.  Because

19   I kind of got it, just by reading this, going through it,

20   that your client was a better plaintiff than a defendant,

21   unless your client concurs that Koch ought to be on the

22   property.

23          MR. SIMANK:  No, he does not.

24          THE COURT:  No, does not.  Why not?  I thought he

25   gave them permission.

1          MR. SIMANK:  Well, that's, no permission granted

2     from Mr. Lopez to Koch Industries to get on the property.

3          THE COURT:  So he would be, in terms of testimony or

4     in terms of deposition testimony or even appearance before

5     the jury, he'd be saying, "They don't have my permission to

6     be there and I didn't give them permission and I want them to

7     leave and if they don't leave, I want damages"?

8          MR. SIMANK:  Well, Your Honor, he would say he did

9     not give them permission to get on the property.  And as far

10    as the issue as to damages, frankly, the claim is probably

11    there.

12         THE COURT:  All right.

13         MR. SIMANK:  So, I haven't discussed that with my

14    client at length but obviously if there wasn't an easement,

15    there wasn't permission to be granted, then it's a trespass

16    and my client would certainly have a right to bring a claim.

17         THE COURT:  Is your client related to any of the

18    other plaintiffs?

19         MR. SIMANK:  I don't believe so.

20         THE COURT:  Did we discuss that the last time we

21    were here?  Did somebody tell me that --

22         MR. WARD:  No, Your Honor.

23         THE COURT:  We're still working with plaintiff's

24    original petition that was filed in --

25         MR. SIMANK:  April 14th, 1999.

1          THE COURT:  April 14th, '99?

2          MR. SIMANK:  That's correct, that's my understand-

3     ing.

4          THE COURT:  Plaintiff lives in what county, in Jim

5     Wells County?

6          MR. SIMANK:  That's correct.

7          THE COURT:  And the land is in Duval County?

8          MR. SIMANK:  That's correct.

9          THE COURT:  Is this land under fence?

10         MR. SIMANK:  That I don't know.

11     (Off the record discussion at counsel table)

12         MR. SIMANK:  It is, Your Honor.

13         THE COURT:  Mr. Lopez, how much are you getting for

14     quail leases these years?

15         MR. LOPEZ:  I beg your pardon?

16         THE COURT:  I said how much are you getting on your

17     land for quail leases these years?

18         MR. SIMANK:  How much are you getting for quail

19     leases these years?

20         MR. LOPEZ:  I haven't leased it yet --

21         THE COURT:  Just in the, I'm not engaged in those

22     activities, I just wanted to know how much --

23         MR. LOPEZ:  Oh, curiosity.  I've got it leased to a

24     team from Austin, Austin, Texas, we're getting about --

25         THE COURT:  In general, what's quail leases in South

CutePDF - www.cutepdf.com

1    Texas going for?

2            MR. LOPEZ:  In South Texas?

3            THE COURT:  Don't you lease property?  As a matter

4    of fact, I got a quail lease from you one time, didn't I, for

5    a friend of mine?

6            MR. LOPEZ:  (No audible response).

7            THE COURT:  Right.  So do you still do that?

8            MR. LOPEZ:  No.  Well, I --

9            THE COURT:  Oh, you don't lease any of your property

10   anymore for hunting?

11           MR. LOPEZ:  Yes, I --

12           THE COURT:  So what's -- and you do that in, I guess

13   that would be Brooks County?

14           MR. LOPEZ:  And Jim Hogg.

15           THE COURT:  Jim Hogg County?  What's the going, what

16   are hunting leases going for?

17           MR. LOPEZ:  Well, right now I don't lease them

18   separately, I lease them for everything.

19           THE COURT:  And how much is that for?

20           MR. LOPEZ:  About ten bucks.

21           THE COURT:  Is that more than a cattle lease?

22           MR. LOPEZ:  Considerably more.  Cattle are in the

23   minus category.  That's what's, that is what makes a ranch

24   able to continue in operation.

25           THE COURT:  Just strictly hunting?

1          MR. LOPEZ:  Strictly hunting, nothing else.

2          THE COURT:  Where is this --

3          MR. LOPEZ:  Barely pays taxes.

4          THE COURT:  Where is this 3200 acres?

5          MR. LOPEZ:  I beg your pardon?

6          THE COURT:  Where is this 3200?

7          MR. LOPEZ:  That land is in Duval, Your Honor,

8  between Freer and Benavides.

9          THE COURT:  Okay.

10          MR. LOPEZ:  But we don't have too much quail, not

11  with dogs.

12          THE COURT:  No.  Okay.  So, as I read the complaint,

13  there is no statement in the complaint that Mr. Lopez

14  committed any tortious conduct to Mrs. Canales.

15          MR. SIMANK:  I agree, and --

16          THE COURT:  And so I can dismiss him right now.

17          MR. SIMANK:  The only thing I will tell you is the

18  prayer does recite a claim for damages and --

19          THE COURT:  But there's no conduct cited upon which

20  those damages could be based so this pleading is subject to a

21  motion to dismiss for failure to state a claim.

22          MR. SIMANK:  I would tend to agree with you, Your

23  Honor.

24          THE COURT:  Okay.

25          MR. SIMANK:  Now, I will point out that, again, I

1    mean if Mr. Lopez was coming into my law office after being

2    cited with this, obviously it could only be one of two

3    things, either he's the plaintiff or he's the defendant, and

4    Mrs. Canales, who is not a lawyer, couldn't possibly bring

5    this action on his behalf.

6         THE COURT:  Do you think she drafted this complaint?

7         MR. SIMANK:  It's obviously signed by her so I'm

8    assuming that's the case.

9         THE COURT:  Why would you assume that?  Is there

10   anybody in her family that has --

11        MR. SIMANK:  Well, sure, I mean Judge Canales is a

12   lawyer.  But anyway, nevertheless, it only puts him in one

13   position and that would be a defendant.  Either that or he

14   ignores it, and obviously, if he was coming to my office for

15   the first time after being served --

16        THE COURT:  No, I wouldn't, I mean I don't think

17   there's any way in the world a judge could grant a default

18   judgment on this pleading in which there is no claim stated.

19   There's no way that I could walk into somebody's court and

20   say, "I'm suing Ron Simank for a million dollars and I want

21   you to have him come to court and answer that," and the judge

22   looks at it and says, "Well, what for, did he run over your

23   dog or what?"

24        (Laughter)

25        MR. SIMANK:  Nevertheless, Judge, that is, that does

1  put him in the position as a defendant in this lawsuit by the

2  fact that he was named.

3          THE COURT:  I don't think it does, because I can

4  either ignore it or recognize the realities of the case and

5  the reality is that he's a plaintiff and not a defendant,

6  especially on your acknowledgement that he doesn't

7  acknowledge giving permission to the defendant to enter.

8          MR. SIMANK:  But that would be, regardless of that,

9  Your Honor, that's still --

10          THE COURT:  But your client, I mean the Canaleses

11  don't even say that he did.

12          MR. SIMANK:  It's my understanding that's part of

13  the, in discussing this --

14          THE COURT:  It ain't here.

15          MR. SIMANK:  I understand.

16          THE COURT:  It ain't here.

17          MR. SIMANK:  I know it's not.

18          THE COURT:  Okay, so.  And let's assume that they

19  are tenants in common.  What violation of the law is it for a

20  tenant in common to give authority to cross the property?  A

21  tenant in common gets to exercise that right.  They don't

22  have to join with the other person.  Now, the defendant may

23  not be able to take advantage of it, that's at the defen-

24  dant's peril, but the plaintiff gets to exercise his right

25  with respect to the property, right?

1          MR. SIMANK:  Right.  That could be true.  The other

2    thing -- and I acknowledge that.  The other allegation that

3    was made in this lawsuit was that there was a payment of

4    money that was being received.

5          THE COURT:  It's not in this pleading.

6          MR. SIMANK:  I understand.

7          THE COURT:  Not the pleading that we remove on.

8          MR. SIMANK:  Sure.  Right.

9          THE COURT:  Okay.  So that's what I've been talking

10   about the whole time is where this case should be.

11         MR. SIMANK:  Right.

12         THE COURT:  Okay.  So let me get now to the next

13   issue and that is I think the time of removal.  As a matter

14   of fact, there's not even a motion to remand from the other

15   side, from --

16         MR. SIMANK:  From --

17         THE COURT:  Right.  And you have in fact filed a

18   motion to remand.

19         MR. SIMANK:  That's correct.

20         THE COURT:  Now, how would a co-defendant file a

21   motion to remand?

22         MR. SIMANK:  Lack of jurisdiction, subject-matter

23   jurisdiction.

24         THE COURT:  What's the problem there?

25         MR. SIMANK:  Diversity.  Lack thereof.

1          THE COURT:  Except if he's, if I don't count him as

2     a defendant because there's no claim stated or I don't count

3     him as a defendant because the realities of the circumstances

4     are that he's really a plaintiff, then I ignore that, too, I

5     just realign the parties.  But here I don't even get to that

6     because there's no claim stated against him.

7          MR. SIMANK:  Well, Judge, without having to go back

8     to the petition again, the prayer definitely calls for

9     relief.

10         THE COURT:  I got it.

11         MR. SIMANK:  I mean there is a statement there that

12    he, that Mr. Lopez and Mrs. Lopez are being sued for damages,

13    for prejudgment and post-judgment interest.

14         THE COURT:  But it's very careful to say what the

15    defendants did but not what Mr. Lopez did.  And the fact that

16    Judge Canales is a lawyer, or whoever drafted the pleading

17    and signed it didn't name Mr. Lopez as committing any torti-

18    ous conduct is not an accident.  So let's talk about amount

19    in controversy.  That was removed when?

20         MR. SIMANK:  In June '99.

21         THE COURT:  I think this gentleman wants, Judge

22    Canales wants to say something.

23         MR. CANALES:  I just wanted to say, Judge, I drafted

24    the pleadings.

25         THE COURT:  I suspected as much.  There's nothing

1    wrong with the pleadings, I just --

2           MR. CANALES:  And there was a reason for the way it

3    was drafted.

4           THE COURT:  So what other issue with respect to

5    subject-matter jurisdiction exists?

6           MR. SIMANK:  I think that's it, the lack of

7    diversity.  It was my grounds for the remand.

8           THE COURT:  Okay.  The other grounds, the other

9    potential problem with lack of diversity would be amount in

10   controversy.

11          MR. SIMANK:  That's correct.

12          THE COURT:  But we have amount in controversy

13   alleged to be more than $75,000, don't we?

14          MR. SIMANK:  It's my understanding that's the case.

15          THE COURT:  Well, Mr. Lemon, how much -- didn't you

16   acknowledge in some of your pleadings that you wanted more

17   than $75,000 or the damages of your client have been $75,000?

18          MR. LEMON:  Your Honor, potentially, I believe it

19   was through the request for admissions that the value was

20   given, that if we're just talking about the destruction of

21   the surface then I would say clearly we're, in my opinion I

22   don't believe we'd be at the $75,000 mark, but there would be

23   a potential for environmental contamination and then also

24   continuing to trespass for the use of the pipeline.  If those

25   actions are going to continue, to be totally honest with the

1  Court, then we would be looking at substantially more.

2          THE COURT:  Well, you do want to be totally honest

3  with the Court.

4          MR. LEMON:  Yes, Your Honor.  If I can back up and

5  just clarify --

6          THE COURT:  So we could say $75,000 is, we don't

7  have a problem with a monetary limit?

8          MR. LEMON:  Your Honor, we would -- yes.

9          THE COURT:  And that's why you haven't moved to

10  remand?

11          MR. LEMON:  Your Honor, yes, and actually Mr. Lopez

12  is --

13          THE COURT:  You haven't moved to remand, have you?

14          MR. LEMON:  No, Your Honor, and we haven't moved to

15  remand --

16          THE COURT:  You think subject-matter jurisdiction is

17  appropriate here?

18          MR. LEMON:  Your Honor, not in regards to Mr. Lopez.

19          THE COURT:  Well --

20          MR. LEMON:  But that's his objection and not ours.

21  And that whether we're here or whether we're in State Court,

22  naturally, to be honest, I'd feel a little more comfortable

23  procedurally in State Court but I don't have a problem with

24  trying the case in Federal Court.

25          THE COURT:  The jury, you get the same people.

1          MR. LEMON:  But what I don't want to have to do is

2     try it twice.  And the situation that we're running into --

3          THE COURT:  No judge wants to try them once so we

4     could certainly join you on twice.

5          MR. LEMON:  And that, one of the problems that I've

6     run into and some of the information that we had received

7     from Koch and then some information that I recently -- I

8     obtained some photocopies last week in regards to an

9     attempted payment to Hector Lopez by Koch Industries and

10    release documentation and what not that they had submitted

11    for his signature.  It's also my understanding that, in

12    review of some of the documentation and speaking with Mr.

13    Simank last week, is that Mr. Lopez was recognized as a party

14    by Koch before the initial removal by sending discovery to

15    him.  I don't know, it wasn't clear whether or not he was

16    acknowledged as a defendant in the filings that were made by

17    Koch.  I don't have copies of them, I'm not sure.  Koch

18    clearly didn't give any notice of the removal to Mr. Lopez.

19    The situation, the problem that I run into --

20         THE COURT:  Well, Mr. Lemon, if I gave to your

21    client a judgment today on the only live pleadings before the

22    Court, the live pleadings upon which there was a removal, and

23    I gave Mrs. Canales a judgment for --

24         MR. LEMON:  A million dollars.

25         THE COURT:  -- a million dollars, one dollar or $50

1    or whatever, and it went up to any court of appeals and they

2    looked at that pleading and they'd see that there was no

3    active claim, the judgment would be automatically in favor of

4    the appellant, Mr. Lopez.

5              MR. LEMON:  And, Your Honor, and that's a situation

6    that, of course we would have to flesh it out but that would

7    be Mr. Lopez's objection, and I believe Judge Canales could

8    explain the reasoning behind not specifically listing out

9    allegations of fact against him, but primarily we were

10   unclear at the time of the original drafting of just Mr.

11   Lopez's involvement.  I have obtained these documents to show

12   that there was something going on back and forth between Koch

13   and Mr. Lopez prior to Koch coming onto the property.  The

14   problem that we would have with the Court's aligning Mr.

15   Lopez simply as a plaintiff, with all due respect, I would

16   say that that doesn't comport with the realities of the

17   situation.  The realities of the situation are, is that

18   although he might be a tenant in common, he has no right to

19   allow his visitors or agents or guests to come on and destroy

20   Mrs. Canales' property rights or property interests regarding

21   the surface, and then again to the potential environmental

22   damage, also allowing a continuing trespass if our statement

23   that the easement is invalid is correct.  We would have

24   separate --

25             THE COURT:  What easement might that be?

1            MR. LEMON:  That would be the easement that Koch

2    alleges gives them the opportunity to be on the premises.

3            THE COURT:  That's not an easement that Mr. Lopez

4    gave them.

5            MR. LEMON:  No.

6            THE COURT:  This is some sort of historical ease-

7    ment?

8            MR. LEMON:  But, yes, Your Honor, but --

9            THE COURT:  Stop.  That's something I don't want to

10   miss.  This is an easement that's alleged to have existed?

11           MR. LEMON:  Yes.

12           THE COURT:  By virtue of what?

13           MR. LEMON:  By virtue of an assignment made from

14   Exxon to Koch Gathering Systems and --

15           THE COURT:  Where did Exxon get it?

16           MR. LEMON:  Exxon got it from the original land-

17   owners down -- from Humble Oil Company, I believe, and then

18   on back.

19           THE COURT:  But did they get it from the Canaleses?

20           MR. LEMON:  No.

21           THE COURT:  Okay, so the prior landowner are alleged

22   to have given, from defendant's perspective, alleged to have

23   given an easement to the defendant's assignors?

24           MR. LEMON:  Yes, yes.  And that -- but basically,

25   we're going to be in a position where, based upon the docu-

1   mentation that we have, we're going to be in a position where

2   we have to sue and move for damages against Hector Lopez.

3   Last time I was here I didn't have, and I appreciate the

4   Court and Mr. Ward and Mr. Pearson's patience with me, I

5   didn't have an understanding of the entire situation, and

6   I've had an opportunity to review a lot of the documentation

7   and the things that have gone on, and if you align Mr. Lopez

8   and his wife simply as a plaintiff, the reality of the situ-

9   ation is is that we're going to sue them.  We have to.  We

10  have definite causes of action against them that were gener-

11  ally stated in State Court that basically, and I'm going to

12  say based upon representations that have been made to me,

13  that it wasn't made clear to Judge and Mrs. Canales exactly

14  what Mr. Lopez's position was.  It started out that they,

15  that initially when a Koch entity, and I believe it was Koch

16  Petroleum Group, but initially when the Koch entity con-

17  tacted, or when they contacted Koch, Judge Canales was told

18  by Koch that --

19          THE COURT:  Excuse me, when who contacted Koch?

20          MR. LEMON:  When Judge Canales -- Judge Canales or

21  Mrs. Canales saw a sign that somebody was on the property and

22  it confused them.  They then got in contact at a later date

23  with Koch and were told that, "You don't own the property,

24  you don't have an interest in it, leave us alone."  Naturally

25  they were persistent in their claims.  I believe they

1   attempted to contact Mr. Lopez.  I'm not quite sure of the

2   conversations that went on with Mr. Lopez but then they got

3   back in touch with Koch and Koch explains, "Well, maybe you

4   do have an interest but don't worry about it, we already paid

5   Hector everything."  And that was alluded to me, anyway, for

6   the first time in our last hearing that we had before the

7   Court when Mr. Pearson informed us.  And at that point in

8   time, again, I would have to say I had no idea why --

9         THE COURT:  Well, why did anybody sue Hector Lopez

10   the first time?

11         MR. LEMON:  Well, they sued Hector Lopez the first

12   time because Rachel, Mrs. Canales sued Hector Lopez the first

13   time because clearly everybody was saying that Hector had

14   some involvement in it.  I believe that Koch was, and rightly

15   so, trying to avoid litigation by saying, "Look, your co-

16   tenant has given us permission" and so on and so forth.

17         THE COURT:  The question was why would Mr. Lopez be

18   sued in the first place and the answer would have to be based

19   upon something that Mrs. Canales believed was occurring, and

20   the only way she would believe that is because she knew some-

21   thing of her own observations or someone told her.  Now, the

22   only persons that could have told her anything was Mr. Lopez

23   or Koch or whoever else was involved in the activities.  So

24   at the time this was going on they had some reason to believe

25   that Lopez may somehow be involved.  What was that reason?

1    What was happening?

2              MR. LEMON:  Koch told them.

3              THE COURT:  Okay, Koch told them what when?

4              MR. LEMON:  Koch told them prior to the filing of

5    the suit, after their initial contact with Koch, Koch told

6    them that Hector had given them permission to go ahead and go

7    on the property and they had already paid him the money and

8    so on and so forth.

9              THE COURT:  So that before the lawsuit was filed

10   Mrs. Canales knew, based on what Koch had said --

11             MR. LEMON:  Your Honor, and, you know, I don't

12   necessarily want to fall in any traps but I can't set a

13   definite time line in those regards.

14             THE COURT:  Well, my whole comments, my whole direc-

15   tion of this inquiry is going to be what was occurring before

16   the suit was filed.

17             MR. LEMON:  I would say, Your Honor, I don't neces-

18   sarily know.  I do know that this stuff did happen.

19             MR. CANALES:  May I speak, Judge?

20             THE COURT:  Yes, sir.

21             MR. CANALES:  I can clarify some of those things for

22   you.

23             THE COURT:  I was just asking your lawyer.  You're

24   certainly not required to answer.

25             MR. CANALES:  No, I realize that, but there's some

1    things that he wasn't privy to as far as evidence.  But if I

2    may give the Court a very brief outline of what brought this

3    suit about and why Mr. Lopez and his wife are joined.

4              THE COURT:  If you're speaking now, they're going to

5    want to know are you speaking as a party or as an attorney?

6              MR. CANALES:  I can't speak as an attorney, Judge,

7    unless you let me join and which I would be pro se.  I'm not

8    a party to the lawsuit.

9              THE COURT:  Well, I don't know whether you want to

10   or not.  I might appoint you to something.  I'm running

11   short.  So you're going to speak as a party?

12             MR. CANALES:  Well, if you permit me to, I'll be

13   more than happy to.

14             THE COURT:  You have an application to intervene and

15   it is not opposed.  I'll permit you to intervene.

16             MR. CANALES:  Thank you, Judge, I appreciate that.

17   This lawsuit -- well, let me backtrack.  My wife and Mr.

18   Lopez purchased that ranch.  It's in Duval County.  It was

19   referred to as the Americana Ranch, belonged to the Braslau

20   family.  And they purchased it and they are in fact tenants

21   in common.  I can represent that to the Court.  I'm familiar

22   with the legal concepts.

23             THE COURT:  The Braslau family from here in Corpus?

24             MR. CANALES:  From here in Corpus Christi.  There's

25   quite a few of them and, as the Court may well be aware of,

1   and there's a lot of owners but really no one owns it because

2   all they do is fight among themselves.  And they sold it and

3   my wife purchased a one-half interest in it.  She doesn't go

4   out there very often.  She went out one evening with my

5   daughter and she called me frantically and told me that she

6   had been out there and someone had bulldozed a large portion

7   or a big right-of-way from one side of the ranch to the

8   other.  And I told her just get the names, there's bound to

9   be a name on the sign who worked out there if there's a

10  pipeline, and she said, "Well, it's Koch."  I called Koch, I

11  talked to I believe a Mr. Daniels with Koch, and I told Mr.

12  Daniels that Koch had been out there on my wife's property,

13  and I told him that they hadn't taken, they hadn't paid her

14  for any damages, and I also asked him for a copy of their

15  easement.  Okay.  Mr. Daniels' first comment was that, "Your

16  wife does not own any property out there."  And I told him

17  that he was wrong, that she owned a one-half undivided

18  interest.  After that happened, apparently, and I'm assuming

19  this because he didn't tell me, he calls me back later and he

20  acknowledges then that she owns one-half but that he had

21  negotiated with Hector and that Hector was authorized to

22  negotiate on behalf of my wife for this damage and for let-

23  ting Koch go through.  I told him that that wasn't correct.

24  And I found it difficult to believe that because he first

25  told us we didn't own any part of it.  It would be difficult

1   for him to have talked to Hector about our interest if he was

2   first telling me that she had no interest.  After that

3   happened, they brought me a copy of an assignment from Exxon

4   to Koch.  And I had been out on the property before.  And we

5   were asking also for damages at the time.  We haven't been

6   paid or offered a penny to this day.  Koch told us, Mr.

7   Daniels told me, said, "We've already paid Hector."  I'm

8   assuming that what he says is correct.  We haven't received

9   anything.  But nevertheless, I've had some dealings with Koch

10  in the past and because of the condition of the pipeline,

11  Judge, at the time that this replacement was put in, I had

12  asked them to show me that the pipeline had been in use and

13  that they had been paying taxes on it and that they had

14  rendered it.  Because I went up to Austin and I checked the

15  Railroad Commission records and the closest thing I could

16  find was one pipeline running in this general area when there

17  are in fact two, and the one that I saw at the Railroad

18  Commission records said that the pipeline was idle.  So I

19  wanted to find out if in fact the pipeline was being used and

20  if it was being rendered for taxes and if taxes were being

21  paid, because I also went to the taxing authority and I was

22  unable to find anything -- now, I'm not saying there aren't

23  any because they had limited records -- to show that this

24  pipeline was being either rendered or the taxes paid on it,

25  either one of the two pipelines for that matter, because

1    there were two of them running parallel.

2         THE COURT:  In the same right-of-way?

3         MR. CANALES:  Yes, sir, they were within a few feet

4    of each other.  But the pipeline is on, a great portion of

5    the pipelines was running on top of the ground and it was

6    rusted out on top.  Not all the way through.  But the Court

7    is probably aware that pipelines are very meticulous about

8    their coating and the depths and all of this and because of

9    the condition of the pipeline and because it had no coating

10   on it and because it was on top of the ground at great

11   lengths across the property, it just seemed to me that what

12   had happened was it had been abandoned.  And so I asked Koch

13   to give me some information, way back before April when the

14   suit was filed and they told me that they would.  I said, "I

15   would like to see where taxes were being paid, the property

16   was being rendered and it was being maintained."  And I

17   also --

18        THE COURT:  Did you -- excuse me.  Did you ever get

19   a copy of the easement?

20        MR. CANALES:  I have a copy of the easement.

21        THE COURT:  May I see it?

22        MR. CANALES:  I don't know if I have it with me,

23   Judge, but it dates back to 1930-something, I believe, or

24   1940.  It was from a Hammond or Hamilton, I can't --

25        THE COURT:  Let me just catch up with you before you

1  continue.  So you've got one pipeline with oil, gas, plus

2  products and water, together with right to enter, and some

3  sort of arbitration provision.  Okay.  So in the same right-

4  of-way there was one underground and one above ground?

5        MR. CANALES:  No, sir, they were both, not all of

6  the way, some of it was partially covered, but two pipelines,

7  sometimes you could see this one on top of the ground,

8  sometimes you could see the other one on top.

9        THE COURT:  Was either one of them capable of use?

10       MR. CANALES:  That's what I was trying to find out,

11  Judge.  I couldn't tell from the outside appearance other

12  than they were totally rusted where they were exposed, there

13  was no covering on them and --

14       THE COURT:  Both of them were rusted?

15       MR. CANALES:  Yes, sir.  Yes, sir.  And anyway, from

16  the information that I received from Koch, if I may proceed,

17  they told me they had paid Mr. Lopez and that Mr. Lopez had

18  given them permission to go on the property and that he was

19  negotiating for us, when in fact they had originally told us

20  that we didn't even own an interest.  I tried to get informa-

21  tion from Koch at the same time that we were trying to

22  resolve the matter.  Never got anything from them other than

23  copies of some of the cathodic devices that they had appar-

24  ently hooked up prior to, I'm sorry, after they had acquired

25  the pipeline from Exxon and after the new one apparently had

1   been put in, I would assume.  I didn't check the dates.  But

2   I wasn't interested in Koch's activities, I was interested in

3   Exxon's activities since the condition of the pipelines prior

4   to them being -- well, one of them was actually removed and

5   not replaced.  Just one was replaced.

6          THE COURT:  Is it your position that that pipeline

7   can be abandoned?

8          MR. CANALES:  Certainly, Judge.  Under Texas law, if

9   you do not -- well, you don't even have to not use it, you

10  can take an affirmative position and abandon it.  In fact,

11  I've seen that happen before where pipelines are abandoned in

12  place just for avoiding the cost of extracting them, which is

13  very expensive, especially if you have asbestos on them.  A

14  lot of pipeline companies will just walk away from them.  I

15  had a --

16         THE COURT:  Are they walking away from their -- I

17  wonder if they can walk away from their ownership.  What does

18  the conveyance say about -- it's not a term, it's not a term

19  easement?

20         MR. CANALES:  No, sir, it appears to be one in

21  perpetuity, but it can be abandoned.  And the reason I asked

22  for the tax information is obviously under Texas --

23         THE COURT:  What did you find out?

24         MR. CANALES:  Under Texas law, non-use in and of

25  itself will not support a judgment or a decision for abandon-

1    ment, you have to show an affirmative act, and under Texas

2    law, when you own property you're require to render it, there

3    may be some criminal sanctions that attach to it, and you

4    have to pay taxes.  And I felt that if they hadn't rendered

5    it and they hadn't paid taxes on it that that would be a very

6    strong indication that -- they certainly didn't want to

7    commit a criminal offense -- they would have rendered it and

8    paid taxes.  And I asked for this information.  To this date

9    I have never received it from them.  I even went so far as to

10   contact the engineering company that is the consultant for

11   the County of Duval to see what information I could get from

12   them, because each county appraisal district generally has,

13   in this part of the country, an engineering firm.  Thomas

14   White Pickett is the one that does work, I think Thomas White

15   Pickett was at one time the consultant firm for Duval County

16   but I don't believe they're there anymore.  I think it's a

17   different company I visited with but I'm not sure.  I have

18   some documents from them but --

19           THE COURT:  Why didn't you bring suit against Mr.

20   Lopez?

21           MR. CANALES:  I did bring suit against Mr. Lopez.

22           THE COURT:  Why didn't you state a claim against

23   him?

24           MR. CANALES:  Judge, I've known Mr. Lopez and his

25   wife for a long time, and you asked earlier whether we're

1   related, we are not, but Mrs. Lopez's father at one time was

2   married to an aunt of mine.  She died many years ago, so

3   consequently he was no longer related to me.  He remarried

4   and as a result of that marriage he had a daughter who is

5   Mrs. Lopez, Mrs. Garcia Lopez.  We are not related.  And I

6   have a great deal of respect for them.  They're old families

7   and they've been in our community for a long time.  And after

8   I had gotten the comments from Koch that they had paid Hector

9   and that Hector had negotiated for us, I contacted Mr. Lopez

10  and I found out, he said, "No, I didn't give them permis-

11  sion," and they had sent him a draft and a release that he

12  did not cash the check and that he had not signed the

13  release.  And I was very reluctant, because of my respect for

14  Mr. Lopez, to bring any suit against him and to allege that

15  he had done anything.  I assume that what he's telling me is

16  true.  So I bring him into the lawsuit because I am compelled

17  to, for several reasons, but I'm reluctant to make on behalf

18  of my wife and myself any allegations of wrongdoing until

19  I've actually had a chance to complete discovery.

20          THE COURT:  Your client held up some envelope.

21          MR. CANALES:  The Court is probably aware that

22  bringing a frivolous lawsuit is not something that is smiled

23  upon, and until I've completed the discovery I was reluctant

24  to make any allegations against Mr. Lopez whatsoever or his

25  wife, because I have differing stories now from Koch and Mr.

1    Lopez.  But he's named as a necessary party because it was

2    very convenient to bring him in and at the same time have him

3    participate as we went along in any discovery.  And in the

4    event that I determine that he had some complicity in it,

5    he's already part of the discovery process, we don't have to

6    go back to go and start over again; but in the event that

7    he's not involved, I haven't made any malicious allegations

8    against him.  I am very, very reluctant to accuse someone of

9    something that they didn't do.  But Koch had told me, never-

10   theless, that they had gone in, and it was obvious, they were

11   there.  Let me think where I'm at now.  So we brought the

12   suit and we named Hector as a necessary party.  We have

13   potentially, and I can't tell the Court now, in all honesty I

14   think the Court will, if you look at it, we've got a claim

15   against Mr. Lopez, maybe.  I don't know what his posture is

16   going to be because he hasn't told me.  He apparently got

17   some money from Koch.  He says he didn't cash the check.  We

18   didn't get anything.  We still haven't gotten a penny.  I

19   don't know who's liable, Mr. Lopez or Koch.  The amount of

20   money that he got paid was somewhere in the teens, high teens

21   I think.  In my estimation the amount of damages, in the

22   event that we prevail, and I do feel that we will prevail, if

23   nothing else on the damages, and I think we're going to

24   prevail on the abandonment, too, if we ever get the discov-

25   ery, there's more than what Koch paid him in damages.  He let

1    them in.  He may be a co-tenant but it does not permit him to

2    permit waste of that property, which this would fall into the

3    category of wasting the property if they have environmental

4    contamination out there.  So we're looking at Mr. Hector

5    Lopez and his wife for potential damages.  And I don't know

6    what his position is going to be.  He may end up being a

7    plaintiff, he may end up being a defendant.  As it stands

8    right now, we don't know because we haven't completed or done

9    any discovery whatsoever.  And I know, I understand the

10   Court's observation that the pleadings as they are right now

11   do not state a cause of action and I'm the first one to

12   agree, I've been there, I've ruled on matters similar to that

13   and I have no problems with the Court's observation, I concur

14   in it, but I think it's proper to permit the parties to

15   complete their discovery to find out exactly where we're at.

16   Now, I think also that if Mr. Lopez did give them permission

17   to go in, I think he also has another problem as it relates

18   to my wife Raquel if he let them go in and contaminate the

19   ground by not making contractual provisions which would

20   require not only the extraction of the pipeline but the

21   extraction in a fashion that is, what would I say, a reason-

22   able fashion to avoid contaminating the ground with asbestos,

23   but I don't know.  If he didn't let them go in, then obvi-

24   ously I don't have a claim against him for that, but that's

25   what Koch told me, they let them, that Mr. Lopez let them in.

1          THE COURT:  Who told you that?  Mr. Daniels?

2          MR. CANALES:  Mr. Daniels did.

3          THE COURT:  Who is Mr. Daniels?

4          MR. PEARSON:  Your Honor, Mr. Daniels at that time

5   was a right-of-way agent, I believe, for Koch, a Koch

6   employee.  I'm not exactly certain of his title.  I think he

7   may have been in the right-of-way department.

8          MR. CANALES:  He's the one that Koch sent to me when

9   we made the contact, Judge.

10         THE COURT:  Is Mr. Daniels, what is he prepared to

11  say under oath?

12         MR. PEARSON:  I think Koch's position on this would

13  be --

14         THE COURT:  My question is what is Mr. Daniels

15  prepared to say under oath?  Not what your position is, what

16  Mr. Daniels is prepared to say under oath.

17         MR. PEARSON:  I do not know that, Your Honor.

18         THE COURT:  Why didn't you ask him that?  That's the

19  first thing I would have said, I would say, "Did you tell

20  Hector Lopez that you'd pay him X money to let us on the

21  property, what was the deal?"

22         MR. PEARSON:  Well, the reason I say that, Your

23  Honor, because this is the first time that I've heard it

24  couched in this fashion.  I was informed that my client

25  thought they had a valid easement to go across this land,

1  didn't have to pay anybody any money, offered Mr. Lopez

2  $15,000 for more PR than anything, as his inconvenience and

3  that sort of thing, which was not cashed.

4           THE COURT:  Fifteen thousand dollars worth of PR?

5           MR. PEARSON:  It's actually --

6           THE COURT:  The price of PR is not particularly low.

7           MR. PEARSON:  According to my client it's done with

8  some regularity.  But it was not, excuse me, it was not

9  cashed and the client felt it had a right to go on.  Now,

10  whether or not Mr. Daniels and the Honorable Judge Canales

11  had a discussion along those lines, I'm not aware of it.

12           MR. CANALES:  I'm prepared to make my comments under

13  oath for the Court's consideration.

14           THE COURT:  No, that's all right, I just want to see

15  what the other side is.  You don't have to swear in this

16  court.

17           MR. LEMON:  Your Honor, may I interject something

18  before we get further afield and I lose my train of thought?

19           THE COURT:  Well, it's kind of interesting.

20           MR. CANALES:  Can I make one more comment?

21           THE COURT:  I'm sure your lawyer --

22           MR. CANALES:  I believe, Judge, if I'm not mistaken,

23  that the check was made payable and the release was made only

24  for Hector Lopez.  Pipeline companies, when they're paying

25  someone, they put, just like an insurance company, they put

CMsPDF - www.texiss.com

1   everybody's name so that you sign off on it, and that's

2   another strong indication that these people again began with

3   the premise that we didn't own anything --

4           THE COURT:  Well, I think you're probably right.

5           MR. CANALES:  And I don't know --

6           THE COURT:  Based on the sequence that you told me,

7   I can imagine that that's exactly what they thought.

8           MR. CANALES:  I think, Judge, that the issue with

9   respect to abandonment as far as we're concerned would be

10  resolved extremely easily if they produce the documents which

11  they know we want.  And they have them because in the

12  documents they --

13          THE COURT:  That's almost getting further than I can

14  go today because I've got to make sure whether or not you're

15  even in the right court, and that's what I'm struggling with

16  today.  And I can't, I'm having a hard time keeping you out

17  of here since there's no claim against Mr. Lopez in terms of

18  the statement of the claim.  I'm not so sure that your

19  comment about discovery isn't pretty well taken to find out

20  just whether or not he could be a defendant and shouldn't be

21  named as a defendant necessary party.

22          MR. CANALES:  Can I make an observation, Judge?  We

23  haven't asked for a remand because I feel I'll get just as

24  fair a shake in any court, and like you say, the jury here is

25  the jury there.

1          THE COURT:  I appreciate that.

2          MR. CANALES:  But I'd like to make a comment.

3          THE COURT:  I can't give you jurisdiction that I

4     don't have.

5          MR. CANALES:  I understand, but I think that the

6     Court should be aware of something else, because apparently

7     this idea of diversity and remand has gotten to the point or

8     fever pitch with defense counsel for Koch, but I'd like you

9     to make an observation in some of the record that we have.

10    This suit was filed in April  We were talking about it before

11    then for probably close to a year maybe.  We had told them

12    and I had asked them, in fact they make a comment in their

13    pleadings that why didn't I ask, I asked over and over and

14    over.  In fact, in the disclosures in State Court I informed

15    counsel for the defendant Koch that the contractor who was

16    involved in the installation of this was a necessary party.

17    They did not bring me that information, Judge, until after

18    your deadlines for amending were through.  And I would almost

19    bet you a dollar to a peanut that they also timed it to try

20    to establish some type of limitation claim.  And if they do

21    want to plead limitation, I have, on behalf of my wife, we

22    will plead that they are estopped and that they are barred

23    from claiming limitation by their conduct.  And I think that

24    what they're doing, Judge, is they're making a lot of allega-

25    tions that we are trying to play with the jurisdiction of

1    this Court when in fact I believe, if you'll look at what's

2    happening, they're the ones, because they intentionally with-

3    held that information until after the time for my amendments

4    pursuant to your order.  Or my amendment, I say my wife's

5    amendment.  That wasn't coincidental, Judge.  I've been

6    practicing law too long to know how people practice in court.

7    Now, that is playing with the jurisdiction of the Court.  If

8    the Court wants to take note of who has been playing, I think

9    you ought to look at that.

10          THE COURT:  Well, I don't mind the games, I've just

11   got to have the right field.

12          MR. CANALES:  Yes, sir.  If there's anything on the

13   facts that the Court would like, I'd be happy to --

14          THE COURT:  No, you've been very complete, thank

15   you.

16          MR. LEMON:  Your Honor, just one last thing before I

17   lose my train of thought.  Obviously against Judge Canales'

18   wishes, my statement to the Court is that potentially,

19   regardless of whether Mr. Lopez signed documentation or

20   entered into a release, it would be my position on behalf of

21   my client that he would stand potentially as her fiduciary as

22   tenant in common and that he knew that this was going on and

23   that he failed, entirely refused to notify her of the

24   situation and it was to her detriment.

25          THE COURT:  I don't think tenants in common are

1   fiduciaries.

2          MR. LEMON:  Your Honor, I understand, but I can try

3   to develop and flesh it out further with some of the facts of

4   the situation.   I don't have it all yet but that's another

5   aspect of the case that I had been trying to find some infor-

6   mation on and unfortunately I didn't have anything ready for

7   today.  But just so that the Court will be aware if it comes

8   up later.

9          THE COURT:  Well, are you in the right court or not?

10          MR. LEMON:  Your Honor, I'll say this, Mr. Ward and

11   Mr. Pearson have been nothing but potentially, I'm going to

12   say nice to me, they haven't been real nasty to me.   They've

13   been a little heated with me on occasion but they haven't --

14   and the procedures in State Court are much, much --

15          THE COURT:  Are you working up to a yes or a no?

16          MR. LEMON:  Much, much more familiar --

17          THE COURT:  I didn't ask you whether you were --

18          MR. LEMON:  The answer is, Your Honor --

19          THE COURT:  Excuse me just a minute --

20          MR. LEMON:  The answer is -- I'm sorry.

21          THE COURT:  I didn't ask you where you wanted to be,

22   I asked you if you were in the right court.

23          MR. LEMON:  Your Honor, I'm afraid not, based upon

24   the things that Mr. Simank has put on file and some of the

25   things that I've found out since the last time we were here.

1      THE COURT:  Okay, and what would that be?

2      MR. LEMON:  Potentially Mr. Lopez's, primarily Mr.

3  Lopez's negotiations back and forth with Koch.  Mr. Lopez's

4  and his wife's being named as a party.  Koch acknowledging

5  his position as a party in State Court is the service of

6  discovery.  Not failing to give Mr. Lopez or his wife notice

7  of the removal action.  I still am not sure whether or not

8  the discovery was served and he was recognized as a defendant

9  in the discovery by Koch, I just don't know.  All of these

10  things --

11      THE COURT:  What tort do you believe that he has

12  committed?

13      MR. LEMON:  What tort do I believe that Mr. Lopez

14  has committed?  Well, clearly, Your Honor, he is a party to,

15  in my opinion he's a party to this trespass.  Based upon the

16  information, the independent information that we have from

17  Koch --

18      THE COURT:  Why would he be a party to a trespass if

19  he is a tenant in common?

20      MR. LEMON:  Well, Your Honor, and with that I'd have

21  to, it would take me a little while and I'd go around the

22  mill, but I'll drop that.  But again, as Judge Canales has

23  stated and I stated previously, any wastage, any destruction

24  of the property, that's a tort that he's assisted in permit-

25  ting, any potential which has occurred, regardless of whether

1    there's environmental damage or whether or not there's a

2    trespass there.   And that clearly, again --

3         THE COURT:  How can there be a trespass against a

4    right-of-way owner, excuse me, wasting to the right-of-way

5    holder if the right-of-way documents give him the power to go

6    in, maintain, remove, replace a pipeline, and how do you put

7    that off on the co-tenant?  He didn't have anything to do

8    with, Mr. Lopez wouldn't have anything to do with the con-

9    tractor that goes in and lays it, wouldn't even have the

10   ability to tell him what to do.  He might have the ability to

11   argue with him, but these right-of-way holders, they can get

12   pretty uppity about the use of their own rights-of-way.

13        MR. LEMON:  Well, Your Honor, and, good point, but

14   I've discussed this with both Judge Canales and Mrs. Canales

15   and my wife who, I will say, knows a little bit more about

16   this than I do, but it happens, just because they have a

17   piece of paper that says that they have an easement, especi-

18   ally here in South Texas based upon the practices, doesn't

19   mean that they do.  A common practice.  And it's not surpris-

20   ing that Koch would spend 15, would pay $15,000 to Mr. Lopez

21   or any property owner just to be able to go on the property

22   so when easement is disputed they can say, "Oh, well you've

23   already released this so that's all you get, you don't get

24   your trespass damage, you don't get anything like this."  And

25   not attacking the oil industry but it has been my practice

Case 2:00-cv-00012   Document 1   Filed in TXSD on 01/11/2000   Page 50 of 131

1    and specifically my wife's practice very recently to find out

2    that it's real easy to show that easements written in 1934

3    against unrepresented, uneducated parties are not that hard

4    to show they've been abandoned, were invalid at the time or

5    what.

6              THE COURT:  But neither Mr. Lopez nor Judge Canales

7    and his wife fall in that --

8              MR. LEMON:  Well, no, Your Honor, but clearly, but

9    the original easement that they based, that they're basing

10   their assignment upon, I would potentially question its

11   original validity.  Then from there everything that Judge --

12             THE COURT:  You can't.

13             MR. LEMON:  Well, I understand, Your Honor, but --

14             THE COURT:  Okay.  Let me hear from Koch.

15             MR. LEMON:  Thank you.

16             THE COURT:  Mr. Canales, let me, Judge Canales,

17   excuse me, let me hear from Koch.

18             MR. CANALES:  I'm not a judge here.

19             THE COURT:  Sir?

20             MR. CANALES:  I'm not a judge here.

21             THE COURT:  Yes, you are.  But let me speak to

22   Koch's attorneys right now.

23             MR. CANALES:  Certainly.

24             THE COURT:  Go ahead.

25             MR. PEARSON:  Your Honor, our position on this with

1  regards to the Lopezes is we don't think they are a party.

2  There's no causes of action pled against them.  We haven't

3  served any discovery on them.  There must be some sort of

4  misunderstanding there.  We served discovery on Mrs. Canales

5  in State Court, requests for admissions on the jurisdictional

6  amount of $75,000, which she denied there being something

7  less than that in dispute.  That's one of the ways we got

8  here.  Frankly, I don't know what type of cause of action the

9  plaintiffs intend to plead against Mr. Lopez.  We don't think

10  he's a party, don't think he has been a party.  If he was, I

11  find it curious that nobody moved for a default judgment

12  since he didn't answer for over seven months.  And I think

13  that's pretty much our position.

14      MR. WARD:  Judge, just to clear up one matter, I

15  think I know the answer to the question about the discovery

16  being served.  After -- I'm looking for the date but I'm sure

17  it's in the Court's file -- the plaintiffs filed a statement

18  regarding the status of the Lopezes, whether they were

19  parties, it was towards the end of October, some weeks after

20  the hearing before this Honorable Court, and for the first

21  time in that statement the statement was made that plaintiffs

22  were taking the position that the Lopezes already were

23  parties.  One of the statements within that pleading or

24  information to the Court said, "Oh, no, Koch never served a

25  copy of the removal notice on the Lopezes."  As a courtesy

1   after that, Your Honor, I sent a copy of the entire removal

2   pleading to Mr. Lopez.  Within one of the exhibits to the

3   removal notice is the only discovery that's been done in this

4   case other than disclosures, that being the answers to the

5   requests for admissions, all of which, every single one of

6   which went to the issue of amount in controversy.  That's the

7   only discovery that's been sent to Mr. Lopez.  It was within

8   a couple of days --

9        THE COURT:  Let me ask you, let me ask you some-

10  thing.  Let's assume that everything that we say is true but

11  that we get to the -- that I said is true, that you said is

12  true, that there's no claim pled against Mr. Lopez and for

13  purposes of jurisdiction we should ignore it, find an out-of-

14  state defendant, find amount in controversy.  Then let's

15  assume that discovery proceeds and in that discovery we find,

16  as Judge Canales suspected that we might, some sort of

17  negotiations or consummation of negotiations between your

18  client and Mr. Lopez in which money or other promises changed

19  hands, and at that point those promises or monies not being

20  made to the benefit of Mrs. Canales, the owner of the

21  property.  So then Mrs. Canales says, "Now I want to bring

22  Mr. Canales (sic) in because he is in fact a defendant and he

23  is a necessary party to the resolution of this dispute."

24  Then I'm faced with the choice at that time of whether or not

25  I can let him in, and I can let him in at that time and I can

1  permit his joinder and I can remand it to State Court because

2  I in fact would believe at that time that he would be a

3  necessary party, all right?  I have that power.

4          MR. WARD:  I'm following you, Your Honor.

5          THE COURT:  Okay, so.

6          MR. WARD:  May I respond, Your Honor?

7          THE COURT:  I think I'm, right now the only thing

8  I'm working up to is a determination of whether or not there

9  in fact can be a cause of action pled against Mr. Lopez.  I

10 suspect what's going to happen is that your right-of-way

11 owner or your right-of-way agent either did not get a full

12 title policy -- not policy but full title search.

13         MR. WARD:  That's correct.

14         THE COURT:  And that he negotiated with Mr. Lopez

15 and Mr. Lopez, being the wise landowner, wasn't ready to make

16 a deal.  He probably could have figured out that if you put a

17 pipeline company on hold you can come back, see what's going

18 on.  He doesn't have a duty, insofar as he knows, to tell

19 Mrs. Canales.  So it comes back and your Mr. Daniels is

20 surprised.  Because I don't think Mr. Lopez is going to tell

21 Mr. Daniels, "Well, we're going to cut the Canaleses out of

22 this," I don't think that's going to happen, and I don't

23 think Mr. Lopez is going to take the responsibility of tel-

24 ling Mr. Daniels, "Don't worry, I've got all the authority

25 that I need from Judge Canales and his wife."  I don't think

1  that Mr. Lopez is that intent on social suicide in that part

2  of the world because nobody is going to take that on them-

3  selves and make that kind of representation against that

4  family.  Nobody is going to do that.  So the fact is, is that

5  your right-of-way man didn't have what he needed to have to

6  make a decision.  So he's still got to deal with them without

7  regard to what court we're in, and I want to know what you're

8  going to do about that, and why we haven't resolved this

9  thing without my getting involved or even some other judge

10  getting involved.  It's not too early to resolve this dis-

11  pute.  You don't have -- if you're certainly willing to pay

12  Mr. Lopez $15,000 then you've got some more money to pay

13  Judge Canales.  And it's a mistake your corporation made and

14  that's too bad, you know.  If her ownership, and I'm sure it

15  is, is recorded in the deed records of the county, then you-

16  all made a mistake, you made a mistake, you've got to come,

17  you've got to get right with these people.  So the point is,

18  if we want to narrow it back down to jurisdiction, is I can

19  let it sit awhile and I can let the discovery go on about

20  where we are, then I can rule on the motion to remand that at

21  least Mr. Simank has somehow filed and see whether or not Mr.

22  Lopez ought to be here as a defendant.  I suspect it's going

23  to turn out not that way.

24          MR. WARD:  Your Honor, he does need to be here as a

25  plaintiff, we agree.

1          THE COURT:  I agree with that, but he's not --

2          MR. WARD:  For purposes of resolving it.

3          THE COURT:  But if he's here as a defendant you

4    ain't here.

5          MR. WARD:  Exactly.

6          THE COURT:  So we might as well let the discovery

7    kind of kick on for a little while longer, find out what you

8    and Mr. Lopez were talking about, find out just exactly

9    what's happened and find out which side of the fence he ought

10   to be on, and if he ought to be on the plaintiff's side,

11   well, we keep going here, if he ought to be on the defen-

12   dant's side, well, we just send it back to Duval County.  Any

13   reason not to do that?

14         MR. WARD:  No reason not to do that, Your Honor.

15         THE COURT:  Okay.  Mr. Simank?

16         MR. SIMANK:  That's fine, Your Honor.

17         THE COURT:  Okay.  Now, how are we going to get the

18   discovery done to that point?

19         MR. CANALES:  If I may, Judge.  Can I make an

20   observation, Judge?

21         THE COURT:  Yes.

22         MR. CANALES:  You had asked the question earlier how

23   can a right-of-way owner trespass.  They can trespass by

24   going beyond the bounds of their right-of-way and not --

25         THE COURT:  Not only the physical bounds but they

1   can go beyond the grant of authority.

2          MR. CANALES:  Well, what I would suggest, Judge, is

3   if they did inter any type of asbestos out there, that is

4   outside of the grant and I think outside of the law also.

5          THE COURT:  You've got me there, I don't know about

6   the -- I'm sure they were using asbestos back in the '30's.

7          MR. CANALES:  They do it all the -- they did it in

8   the '70's, as far as I know.  But we also have, Judge, the

9   other matter of the joinder of the numerous Koch entities and

10  JFC also or --

11         THE COURT:  I'm going to let your, if I can, I need

12  to let your counsel speak to these matters.

13         MR. CANALES:  Yes, sir.

14         MR. LEMON:  Your Honor, and just one parting shot at

15  Hector Lopez and then into this aspect of the case --

16         THE COURT:  I don't think you need to -- I will tell

17  you that I think all people that come in in my court are

18  honest until demonstrated otherwise and both of the parties,

19  plaintiff/defendant, come into this court with a good reputa-

20  tion for both of those for integrity, so I have an idea that

21  what's happened here is just what I said in the beginning, is

22  that Koch stubbed its toe looking at the title search

23  documents and may not even have a valid easement.  Now,

24  that's the point that Mr. Canales, that Judge Canales is

25  raising and I don't know whether it's a valid easement or

1   not.

2        MR. LEMON:  Yes, Your Honor.

3        THE COURT:  And I don't have to decide that right

4   now.  I just need to decide whether or not Mr. Lopez is going

5   to be Plaintiff Lopez or Defendant Lopez and the only thing I

6   want to do right now is limit discovery to that issue, and I

7   want that discovery done promptly so I can get to my juris-

8   dictional question promptly so that if you're not supposed to

9   be here you go back to the court that you're supposed to be

10  in.

11       MR. LEMON:  Yes, Your Honor, and --

12       THE COURT:  And if he's supposed to be a plaintiff,

13  then I want to get on with setting this case for trial.  And

14  I will promise you that the next thing I'm going to do after

15  I find that you should be here is I'm going to order media-

16  tion because there is not any reason for Koch, as far as I am

17  concerned, to not recognize its responsibilities to the

18  Canales family.  On the other hand, Judge Canales, if in fact

19  the easement is just one of those old-time easements that

20  landowners get stuck with here in South Texas, that happens,

21  too, you know that, and you'll just have to live with it and

22  get whatever damages you can out of.  But that's, as far as

23  I'm concerned, that's sort of a second phase of discovery

24  that I don't have to deal with right now.  Now, if the

25  parties want to deal with them all at the same time and say

1    whatever discovery we undertake here will also be binding in

2    State Court in the event of a remand, then you can go ahead

3    and do that.   I don't have much reason why you shouldn't.

4    But I do have a reason to tell you that I want all the dis-

5    covery with respect to the jurisdictional issues completed

6    with the next 30 to 45 days, although the next 30 days is not

7    a very, 30 days is Christmas and that's kind of a distrac-

8    tion, so why don't we say 60 days and you can begin whenever

9    you want or you can agree on and let's get these jurisdic-

10   tional issues out of the way.   And that includes all these

11   other corporate parties and that includes the role of the

12   contractor in the laying of the pipeline.   Now, I don't

13   think, based upon what I've read, that that contractor is

14   going to have much role in this litigation insofar as keeping

15   you here or not the way these -- unless there's some special

16   relationship.   That guy is paid to go out there and lay a

17   pipeline and mess up the ground and maybe get away with as

18   little as he can, that's what he's going to do, he's not

19   going to plant a rose garden after he lays that pipeline.   On

20   the other hand, he may have been in the pipeline business for

21   a long time and puts them back to the extent that he can.   I

22   think you and your client need to make a decision as early on

23   as possible before the legal fees get to high.

24           MR. LEMON:   Your Honor, and I understand that.

25           THE COURT:   As to whether or not this is a valid

1    easement so that you don't unnecessarily expend your

2    resources that you don't need to.

3         MR. LEMON:  Well, Your Honor, and not to be out of

4    turn but everything that we've found so far seems to follow

5    with the pattern to show that the easement was abandoned.

6    Taxes weren't paid on it and it wasn't used.  And so basi-

7    cally all I would ask, and I'm sure that they'll assist us,

8    is Koch to show us how Exxon was using it and so on and so

9    forth and give us that explanation.

10        THE COURT:  Well, Koch doesn't know how Exxon was

11   using it.

12        MR. LEMON:  Well, Your Honor --

13        THE COURT:  Koch took a chance.  Koch, believes --

14   maybe they did.  Maybe Exxon told them, "Oh, yeah, yeah,

15   yeah, yeah."

16        MR. LEMON:  Your Honor, the sales agreement from

17   Exxon to Koch says the transfer of all documents regarding

18   that pipeline was made at the time and that --

19        THE COURT:  That doesn't necessarily -- I mean there

20   are a lot of documents.

21        MR. LEMON:  That's exactly right, Your Honor, and

22   that's one of the problems that we're running into.

23        THE COURT:  No, you're going to have to find out

24   what, it seems to me that the best knowledge of what Exxon

25   was doing with that pipeline is with Exxon and is not going

1    to be with Koch.

2          MR. WARD:  Judge, I strongly agree with the Court's

3    comments about resolving in discovery the jurisdictional

4    issues first.  One of the reasons we couldn't give you a more

5    complete answer about Mr. Gonzalez, he's no longer with Koch,

6    he's out in West Texas.  We've made -- Daniels, sorry, Al --

7          THE COURT:  I'm always reluctant to say, "Now, who's

8    Mr. Gonzalez" --

9          MR. WARD:  Who's he.

10         THE COURT:  -- in a conversation because I'm afraid

11   we've been talking about him 10 minutes ago and I've forgot-

12   ten.  I'm glad to know that nobody discussed Mr. Gonzalez.

13         MR. WARD:  In any event, Your Honor, we have already

14   started the process of contacting the folks with the juris-

15   dictional question in mind.  I believe if we could do -- I've

16   just counted three witness who either need to be deposed

17   or --

18         THE COURT:  And who are they?

19         MR. WARD:  Well, from, I believe the plaintiffs

20   would want those folks who dealt, who Judge Canales alluded

21   to, which would be certainly Al Daniels; another fellow

22   mentioned in the plaintiff's disclosures was a guy named Delo

23   Gattis who sort of followed Mr. Daniels in a similar role and

24   there was some overlap; and then possibly Mr. Bobby Martin,

25   although maybe not.

1          THE COURT:  Who's he?

2          MR. WARD:  He succeeded Mr. Gattis.  The first two

3    gentlemen, Mr. Daniels and Gattis, it doesn't really make a

4    difference but they were I believe contractors who worked for

5    Koch.  Mr. Martin is an employee of Koch and has had a lot of

6    dealings with the Canales family.  I'm not sure how many he

7    had during that relevant time.  But in terms of the issues

8    that have been discussed with regard to jurisdiction, those

9    are the three folks that come to my mind.  With regard to

10   what Koch would want, we would want the depositions of Judge

11   Canales, Mrs. Canales, Mr. Lopez and then depending on what

12   he says, Mrs. Lopez,  He may say she doesn't know anything

13   about this, I don't know, but it would be those four.

14         THE COURT:  Why do you need the depositions of Judge

15   Canales and Mrs. Canales for jurisdictional purposes?

16         MR. LEMON:  I can tell you, Judge.

17         THE COURT:  Just a minute, I want him to answer,

18   it's his request.

19         MR. WARD:  Well, as to AFC, for example, the

20   contractor, there's a question -- or we've already been told

21   today what we already anticipated which was that there will

22   be an argument that in effect the discovery rule applies

23   against Koch with regard to AFC because Koch withheld know-

24   ledge regarding AFC's identity from the Canalases, and we

25   would like to ask questions about dealings with AFC and

1    things of that nature.   Also, Your Honor --

2                THE COURT:  Well, the relationship is going to be

3    what's the relationship initially between Koch and AFC.   What

4    did you hire AFC to do?

5                MR. WARD:  We hired them to go dig pipelines, Your

6    Honor.

7                THE COURT:  Okay.   Do you have any ownership

8    interest in AFC?

9                MR. WARD:  No.

10               THE COURT:  It's a completely separate and

11   independent contractor?

12               MR. WARD:  Yes, Your Honor.

13               THE COURT:  Do they have any ownership interest in

14   the line?

15               MR. WARD:  No.

16               THE COURT:  Do they have any ownership interest in

17   any of the products that go down the line?

18               MR. WARD:  No.

19               THE COURT:  They're just a contractor?   Have you got

20   a contract that shows that?

21               MR. WARD:  Yes.

22               THE COURT:  Have you shown that to the plaintiffs?

23               MR. WARD:  Yes.   I think --

24               THE COURT:  So this issue with respect to Koch is, I

25   mean AFC is going to be the limitations issue?

1        MR. WARD:  Yes.  I think the other thing, Your

2   Honor, is all of the Koch witnesses, shall we say, on that

3   issue obviously will be questioned about all the issues we've

4   discussed today and --

5        THE COURT:  I really, with respect to AFC, I don't

6   think AFC is necessary.  I think -- and the reason that I

7   don't is they stand behind the damages that AFC has done to

8   the property, so -- I think they do.  You don't?  Do you

9   agree or not?

10       MR. WARD:  I don't think they're a necessary party

11  at all.

12       THE COURT:  Listen to me.  Do you agree, to the

13  extent that AFC was working in your interest, working on your

14  right-of-way, the damages that you caused to their property

15  are your responsibility?

16       MR. WARD:  Yes.  Not admitting that we caused

17  damages but if so, yes, we would be liable for their work.

18  We hired them to do the work.

19       MR. SIMANK:  But at the same time, they would be

20  jointly and severally liable with Koch.

21       THE COURT:  But that doesn't make them necessary.

22  That may make them, that may hook them, but complete relief

23  can be awarded to the plaintiff because I've got the financi-

24  ally responsible party here in court and if they acknowledge

25  that they're responsible for the damages, then I don't need

Case 2:00-cv-00012   Document 1   Filed in TXSD on 01/11/2000   Page 64 of 131

1    anybody else.

2            MR. LEMON:  But they haven't, Judge, and --

3            THE COURT:  I just heard them.

4            MR. LEMON:  Well, statements of counsel aren't

5    evidence, Your Honor, and I --

6            THE COURT:  No, but they're binding.

7            MR. LEMON:  And I trust Mr. Ward's --

8            THE COURT:  They're not going to go to the jury but

9    they're binding for judgment purposes.

10           MR. LEMON:  And I trust Mr. Ward's veracity, but

11   even in the small practice that I've had I've been burned

12   once too often by going ahead and going along with original

13   thinking and what I don't want to do is to be able to get a

14   judgment and then have AFC come in and say or Koch come in

15   and say, "Ha, ha, ha, they found all against AFC, we don't

16   have to pay anything."  And until that's determined, which I

17   think we need to do, and there are some, it's not as cut-and-

18   dried, in my opinion, as represented, I believe there's some

19   issues we need to flesh out about AFC, and we have --

20           THE COURT:  Okay, here's what we're doing.

21           MR. LEMON:  Okay.

22                              RULING

23           THE COURT:  I've got to go on to some other cases.

24   I'm going to give, for purposes of the jurisdictional issues

25   only, four depositions per side limited to five hours per

1    deposition.   That doesn't mean you have to use all of those

2    hours, because I don't think that Judge Canales and Mrs.

3    Canales and maybe even Mr. Lopez have got five hours of

4    information on this matter and there's no sense to pick them

5    apart.   But I'm specifically thinking about Mr. Daniels and

6    everybody else in Koch when they figured out that in fact

7    they didn't have all the landowners that were involved in the

8    3200 Americana Ranch, that must have caused some eyebrows to

9    be raised around corporate headquarters.   So let's do that

10   and let me have that done by 60 days.   You can file your

11   amended positions within 15 days thereafter and reply to the

12   other parties, and that will tell us -- Mr. Simank, are you a

13   party in this lawsuit or not?

14            MR. SIMANK:   Your Honor, as a matter of house-

15   keeping, that's, I was going to ask you.   I'm kind of in no

16   man's land right now.

17            THE COURT:   Well, have you answered?

18            MR. SIMANK:   I have answered.   I have taken the

19   position --

20            THE COURT:   Then you're a party.

21            MR. SIMANK:   Well, I've taken the position I'm a

22   defendant in this litigation.

23            THE COURT:   Well, you may be, but I may take a posi-

24   tion later you're not.   And Mr. Lopez, after he sees these

25   documents, he may rather be on the plaintiff side than on

1    defendant's side.

2              MR. SIMANK:  He may very well be.

3              THE COURT:  If he hasn't been paid, then he may be a

4    plaintiff, too.  And if they represented to him that they had

5    an easement which they weren't entitled to have, he may say,

6    "Wait a minute" --

7              MR. SIMANK:  I understand.

8              THE COURT:  -- "you don't even have an easement out

9    there."

10             MR. SIMANK:  I understand.

11             THE COURT:  How long is this pipeline?

12             MR. CANALES:  Three miles.

13             THE COURT:  Across your property?  But it's a long

14   pipeline other than that?

15             MR. LEMON:  I would say about 14 --

16             MR. CANALES:  Twenty-eight miles, I think.

17             MR. LEMON:  Yeah, well, 14 --

18             MR. CANALES:  Judge, can I ask one further matter?

19   It's very short.  And the Court has indicated that, and I've

20   got a response.  I just want to be able to marshal our

21   depositions.  I've got a copy of documents produced by Koch

22   where they're saying in there that "AFC is an independent

23   contractor and has, and we have no obligations."  I just

24   don't want my wife to get put in the position of coming to

25   court and they're telling us or arguing to the jury, "It

1   wasn't us, it was AFC and they had an independent" --

2        THE COURT:  You've got four depositions, you can

3   choose them as you choose.

4        MR. CANALES:  Well, I just didn't know.  They said

5   that they were going to assume all the responsibility and

6   that's why --

7        THE COURT:  Then get it in writing.  I've got to go

8   on to the next case.

9        MR. WARD:  Judge, quick question, are the deposi-

10  tions limited to the jurisdictional issues, because that will

11  really --

12       THE COURT:  Without agreement of the parties they

13  are.

14       MR. WARD:  Thank you, Your Honor.

15       THE COURT:  Because I don't even know if you're

16  supposed to be here.  I can see it working out either way.

17       MR. SIMANK:  May we be excused, Your Honor?

18       THE COURT:  Yes, you're excused.  Will you prepare

19  an order for me?

20       MR. WARD:  Yes, Your Honor.

21       THE COURT:  Thank you.

22    (The proceedings ended at 2:57 p.m.)

23

24

25

I certify that the foregoing is a correct transcription from
the electronic sound recording of the proceeds in the above
entitled matter.

DEC 2 2 1999

Judith M. Garcia

3

CVisPDF – www.fsvisx.com

## AFFIDAVIT

STATE OF KANSAS     )
                          ) ss.
COUNTY OF SEDGWICK )

    I, Charlie Palmer, of lawful age, after first being duly sworn upon oath, depose and state:

    1.  That I am Executive Vice President of KPG/GP, Inc., General Partner of Koch Petroleum Group, L.P., a Delaware limited partnership.

    2.  That in such capacity, I am familiar with the operations and assets of Koch Petroleum Group, L.P. and KPG/GP, Inc.

    3.  That neither Koch Petroleum Group, L.P., nor KPG/GP, Inc. own, operate, maintain or control any of the pipeline assets of Koch Pipeline Company, L.P.

    FURTHER AFFIANT SAITH NOT.

Dated:  November 18, 1999.

                          KOCH PETROLEUM GROUP, L.P.
                          By: KPG/GP, Inc., General Partner

                          Charlie Palmer, Executive Vice President

STATE OF KANSAS      )
                           ) ss:
COUNTY OF SEDGWICK  )

    Subscribed and sworn to before me this _18th_ day of November, 1999.

                        Notary Public

My Commission Expires:  _4/2/2002_

TERESA M. SHAAD
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 4/2/2002

4

## AFFIDAVIT

STATE OF KANSAS           )
                          ) ss.
COUNTY OF SEDGWICK )

I, Nancy J. Smith, of lawful age, after first being duly sworn upon her oath, deposes and states:

1.      That she is the duly elected, qualified and acting Assistant Secretary of KPL/GP, Inc., General Partner of Koch Pipeline Company, L.P., a Delaware limited partnership.

2.      That in such capacity, she has custody of and is familiar with the minute books and records of the corporation and the limited partnership.

3.      That on July 31, 1995 Koch Gathering Systems, Inc., a Kansas corporation, merged into Koch Pipelines, Inc., a Delaware corporation.  A copy of said merger is attached hereto as Exhibit "A".

4.      That on July 31, 1995 Koch Pipelines, Inc. merged into Koch Pipeline Company, L.P.  A copy of the Certificate of Merger is attached hereto as Exhibit "B".

FURTHER AFFIANT SAITH NOT.

Dated:  November 18, 1999.

                          KOCH PIPELINE COMPANY, L.P.
                          By:  KPL/GP, Inc., General Partner


                          *Nancy J Smith*
                          Nancy J. Smith, Assistant Secretary


STATE OF KANSAS           )
                          ) ss:
COUNTY OF SEDGWICK )

Subscribed and sworn to before me this *18th* day of November, 1999.

                          *Carla Cantrell*
                          Notary Public


My Commission Expires: *7-10-01*

CARLA CANTRELL
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. *7-10-01*



A

CVisPDF – www.fpvisz.com

Case 2:00-cv-00012    Document 1    Filed in TXSD on 01/11/2000    Page 74 of 131

*State of Delaware*

## *Office of the Secretary of State*



I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AGREEMENT OF MERGER, WHICH MERGES:

"KOCH GATHERING SYSTEMS, INC.", A KANSAS CORPORATION,

WITH AND INTO "KOCH PIPELINES, INC." UNDER THE NAME OF "KOCH PIPELINES, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE THIRTY-FIRST DAY OF JULY, A.D. 1995, AT 10:10 O'CLOCK A.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS FOR RECORDING.

*Edward J. Freel, Secretary of State*

0894856   8100M

950171538

AUTHENTICATION:     7591615

DATE:     07-31-95

## AGREEMENT OF MERGER

THIS AGREEMENT OF MERGER is dated this 28th day of July, 1995, pursuant to the General Corporation Law of the State of Delaware Section 252, (hereinafter referred to as the "Merger"). The undersigned Delaware and Kansas corporations (sometimes hereinafter collectively referred to as "Corporations"), Koch Pipelines, Inc. and Koch Gathering Systems, Inc., both subsidiaries of Koch Petroleum Corporation, a subsidiary of Koch Industries, Inc., a Kansas corporation (hereinafter referred to as "Koch"), hereby adopt the following Articles of Merger for the purpose of merging into a single corporation:

WITNESSETH THAT:

WHEREAS, KOCH PIPELINES, INC. (formerly known as Wood River Pipeline Company) duly organized and existing under the laws of the State of Delaware, (sometimes hereinafter referred to as "Surviving Corporation"), having been incorporated on June 27, 1980, and recorded in the office of the Register of Deeds for the County of New Castle on July 18, 1980, with authorized capital stock of 8,001 common shares at no par value and 2,000 preferred shares at no par value, 10,001 of which shares are issued and outstanding to Koch Petroleum Corporation, a Delaware Corporation wholly owned by Koch; and

WHEREAS, KOCH GATHERING SYSTEMS, INC. (formerly known as Buffalo Pipeline Company, Inc., Koch Fujairah, Inc., and Koch Norway, Inc.), a corporation duly organized and existing under the laws of the State of Kansas, (sometimes hereinafter referred to as "Merged Corporation"), having been incorporated on March 16, 1973, and recorded in the office of the Register of Deeds for the County of Sedgwick on July 27, 1973 with authorized capital stock of 1,000 common shares at $1,000 par value, 1,000 shares which are issued and outstanding to Koch Petroleum Corporation, a Delaware corporation wholly owned by Koch; and

WHEREAS, the registered office of Koch Pipelines, Inc., in the State of Delaware is located at 1209 Orange Street, in the City of Wilmington, County of New Castle and the name of its registered agent at such address is The Corporation Trust Company; and the registered office of Koch Gathering Systems, Inc. in the State of Kansas is located at 4111 East 37th St. North in the City of Wichita, County of Sedgwick and the name of its registered agent is H. Allan Caldwell.

WHEREAS, the Boards of Directors of the respective Corporations deem it advisable for the general welfare and advantage of said Corporations to merge the Corporations into a single corporation pursuant to this Agreement, and the Corporations respectively desire to so merge pursuant to this

Agreement and pursuant to the applicable provisions of the laws of the States of Delaware and Kansas;

NOW THEREFORE, the Corporations party to this Agreement, in consideration of the mutual covenants, agreements and provisions hereinafter contained, do hereby prescribe the terms and conditions of said Merger and mode of carrying the same into effect as follows:

FIRST:  Effective on the 31st day of July, 1995 at 11:25:59 p.m. KOCH GATHERING SYSTEMS, INC. shall be merged into KOCH PIPELINES, INC., and the corporate existence of KOCH GATHERING SYSTEMS, INC. shall cease, and the corporate existence of KOCH PIPELINES, INC. shall continue and the Surviving Corporation shall become subject to all the debts and liabilities of both Corporations in the same manner as if it had itself incurred them.

SECOND:  The Articles of Incorporation of the Surviving Corporation shall continue to be its Articles of Incorporation following the effective date of the merger.

THIRD:  The manner of converting the outstanding shares of capital stock of the Merged corporation into shares of the Surviving Corporation shall be as follows:

(A)  All of the 1,000 authorized shares of stock of Koch Gathering Systems, Inc., 1,000 issued and outstanding, on July 31, 1995 at 11:25:59 p.m. shall forthwith be surrendered by Koch Petroleum Corporation and canceled.

FOURTH:  The terms and conditions of the Merger are as follows:

(A)  The by-laws of the Surviving Corporation as they shall exist on the effective date of this Agreement shall be and remain the by-laws of the Surviving Corporation until the same shall be altered, amended or repealed as therein provided.

(B)  The directors of the Surviving Corporation shall be Kyle D. Vann, John Ehlen and B. R. Caffey; and the officers of the Surviving Corporation shall be:

| President | B. R. Caffey |
| Secretary | H. Allan Caldwell |

all of whom shall continue in office until the next annual meeting of the stockholders and until their successors shall have been elected and qualified.

(C)  Upon the Merger becoming effective, all the property, rights, privileges, franchises, patents, trademarks, licenses, registrations and other assets of every kind and description of the Merged Corporation shall be transferred to, vested in, and

2

devolve upon the Surviving Corporation without further act or deed, and all property, rights, and every other interest of the Surviving Corporation and the Merged Corporation shall be as effectively the property of the Surviving Corporation as they were of each Corporation respectively.  The Merged Corporation hereby agrees from time to time, as and when requested by the Surviving Corporation or by its successors or assigns, to execute and deliver or cause to be executed and delivered all such deeds and instruments and to take or cause to be taken such further or other action as the Surviving Corporation may deem necessary or desirable in order to vest in and confirm to the Surviving Corporation title to and possession of any property of the Merged Corporation acquired or to be acquired by reason of or as a result of the Merger herein provided for and otherwise to carry out the intent and purposes hereof and the proper officers and directors of the Merged Corporation and the proper officers and directors of the Surviving Corporation are fully authorized in the name of the Merged Corporation or otherwise to take any and all such action.

The Secretary of State of Kansas is irrevocably appointed agent for receipt of Service of Process of behalf of Koch Gathering Systems, Inc.  The address to which process may be mailed is Mr. Kelley Sears, c/o Koch Industries, Inc., 4111 East 37th Street North, Wichita, Kansas  67220.

IN WITNESS WHEREOF, the parties to this Agreement, pursuant to the approval and authority duly given by resolutions adopted by their respective boards of directors, and that fact having been certified on said Agreement of Merger by the Secretary of each corporate party thereto, have caused these presents to be executed by the President or Vice President and attested by the Secretary or Assistant Secretary of each party hereto as the respective act, deed and agreement of each of said Corporations, on the day and year first herein written.

KOCH PIPELINES, INC.

ATTEST:

By _____
H. Allan Caldwell
Secretary

By _____
B. R. Caffey
President

KOCH GATHERING SYSTEMS, INC.

ATTEST:

By _____
H. Allan Caldwell
Secretary

By _____
Donald L. Cordes
Vice President

3

ATTEST:

By _____
H. Allan Caldwell
Assistant Secretary

KOCH PETROLEUM CORPORATION

By _____
B. R. Caffey
Vice President

4

## CERTIFICATE

I, H. Allan Caldwell, Secretary of Koch Pipelines, Inc. organized and existing under the laws of the State of Delaware, hereby certify, as such Secretary, that the Agreement of Merger to which this certificate is attached, after having been first duly signed on behalf of the said corporation and having been signed on behalf of Koch Gathering Systems, Inc., a corporation organized under the laws of the State of Kansas, was duly adopted pursuant to Delaware Corporation Law Sec. 252 and Kansas Corporation Law Sec. 17-6702, by the written consent of its sole stockholder holding 10,001 of the 10,001 authorized shares of the corporation, the same being all of the shares issued and outstanding having voting power, which Agreement of Merger was thereby adopted as the act of the stockholder of said Koch Pipelines, Inc. and the duly adopted agreement and act of the said corporation.

WITNESS my hand on this 28th day of July, 1995.

H. Allan Caldwell
Secretary
KOCH PIPELINES, INC.

5

# CERTIFICATE

I, H. Allan Caldwell, Secretary of Koch Gathering Systems, Inc. organized and existing under the laws of the State of Kansas, hereby certify, as such Secretary, that the Agreement of Merger to which this certificate is attached, after having been first duly signed on behalf of the said corporation and having been signed on behalf of Koch Pipelines, Inc., a corporation organized under the laws of the State of Delaware was duly adopted pursuant to Kansas Corporation Law Sec. 17-6702 and Delaware Corporation Law Sec. 252, by the written consent of its sole stockholder holding 1,000 of the 1,000 authorized shares of the corporation, the same being all of the shares issued and outstanding having voting power, which Agreement of Merger was thereby adopted as the act of the stockholder of said Koch Gathering Systems, Inc. and the duly adopted agreement and act of the said corporation.

WITNESS my hand on this 25th day of July, 1995.

H. Allan Caldwell
Secretary
KOCH GATHERING SYSTEMS, INC.

6

STATE OF KANSAS    )
                  ) ss:
COUNTY OF SEDGWICK)

     This instrument was acknowledged and executed before me on this _28th_ day of July, 1995, by B. R. Caffey, as President of Koch Pipelines, Inc.

     IN WITNESS WHEREOF, I have hereunto set my hand and seal of office the day and year aforesaid.

                       *Nancy J Smith*
                       Nancy J. Smith
                       Notary Public

My commission expires:  March 1, 1999



NANCY J. SMITH
ROTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 3-1-99

STATE OF KANSAS    )
                  ) ss:
COUNTY OF SEDGWICK)

     This instrument was attested to by H. Allan Caldwell as Secretary of Koch Pipelines, Inc.

     IN WITNESS WHEREOF, I have hereunto set my hand and seal of office the day and year aforesaid.

                       *Nancy J Smith*
                       Nancy J. Smith
                       Notary Public

My commission expires:  March 1, 1999

NANCY J. SMITH
ROTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 3-1-99

· 7

STATE OF KANSAS    )
                   ) ss:
COUNTY OF SEDGWICK)

     This instrument was acknowledged and executed before me on
this _*28th*_ day of July, 1995, by Donald L. Cordes, as Vice
President of Koch Gathering Systems, Inc.

     IN WITNESS WHEREOF, I have hereunto set my hand and seal
of office the day and year aforesaid.

                             *Nancy J Smith*
                             Nancy J. Smith
                             Notary Public

My commission expires:  March 1, 1999



STATE OF KANSAS    )
                   ) ss:
COUNTY OF SEDGWICK)

     This instrument was attested to by H. Allan Caldwell as
Secretary of Koch Gathering Systems, Inc.

     IN WITNESS WHEREOF, I have hereunto set my hand and seal
of office the day and year aforesaid.

                             *Nancy J Smith*
                             Nancy J. Smith
                             Notary Public

My commission expires:  March 1, 1999



.8

STATE OF KANSAS   )
                        ) ss:
COUNTY OF SEDGWICK )

     This instrument was acknowledged and executed before me on this __2 5 th__ day of July, 1995, by B. R. Caffey, as Vice President of Koch Petroleum Corporation.

     IN WITNESS WHEREOF, I have hereunto set my hand and seal of office the day and year aforesaid.

                                 *Nancy J Smith*
                                Nancy J. Smith
                                Notary Public

My commission expires:  March 1, 1999



NANCY J. SMITH
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 3-1-99

STATE OF KANSAS   )
                        ) ss:
COUNTY OF SEDGWICK)

     This instrument was attested to by H. Allan Caldwell as Assistant Secretary of Koch Petroleum Corporation.

     IN WITNESS WHEREOF, I have hereunto set my hand and seal of office the day and year aforesaid.

                                   *Nancy J Smith*
                                Nancy J. Smith
                                Notary Public

My commission expires:  March 1, 1999

NANCY J. SMITH
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 3-1-99

CMPDF - www.festo.com

B

*State of Delaware*

## *Office of the Secretary of State*



I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"KOCH PIPELINES, INC.", A DELAWARE CORPORATION,

WITH AND INTO "KOCH PIPELINE COMPANY, L.P." UNDER THE NAME
OF "KOCH PIPELINE COMPANY, L.P.", A LIMITED PARTNERSHIP
ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE,
AS RECEIVED AND FILED IN THIS OFFICE THE THIRTY-FIRST DAY OF
JULY, A.D. 1995, AT 10:50 O'CLOCK A.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO
THE NEW CASTLE COUNTY RECORDER OF DEEDS FOR RECORDING.



*Edward J. Freel, Secretary of State*

AUTHENTICATION:                    7592059

2529179   8100M                    DATE:

950171552                          07-31-95

## CERTIFICATE OF MERGER

Pursuant to the provisions of Section 263(c) of the Delaware General Corporation Law, for the purposes of merging Koch Pipelines, Inc., a Delaware corporation, with and into Koch Pipeline Company, L.P., a Delaware limited partnership, the undersigned hereby certifies as follows:

1. <u>Name and Domicile of Constituent Entities</u>:

| Name | State of Domicile |
|------|-------------------|
| Koch Pipelines, Inc. | Delaware corporation |
| Koch Pipeline Company, L.P. | Delaware limited partnership |

2. Surviving Entity. The name of the surviving entity is Koch Pipeline Company, L.P.

3. An Agreement of Merger setting out the terms of the merger has been approved by the board of directors and the sole shareholder of Koch Pipelines, Inc. and by all of the partners of Koch Pipeline Company, L.P. and has been approved, adopted, certified, executed and acknowledged by each of the constituent entities in accordance with subsection 263(c) of the Delaware General Corporation Law. An executed copy of the Agreement of Merger is on file at the principal place of business of the surviving entity, Koch Pipeline Company, L.P. at 4111 East 37th Street North, Wichita, Kansas 67220. A copy of the Agreement of Merger will be furnished to any stockholder or partner of the constituent entities, without cost, upon request to Koch Pipeline Company, L.P. at the address indicated above.

KOCH PIPELINE COMPANY, L.P., a
Delaware limited partnership

By: KPL/GP, INC., its general partner

By: _____

Name: <u>B. R. Caffey</u>

Title: <u>President</u>

5

CVisPDF – www.fastio.com

Case 2:00-cv-00012   Document 1   Filed in TXSD on 01/11/2000   Page 88 of 131

Cause No. DE-99-104

| | | |
|---|---|---|
| RACHEL E. CANALES | } | IN THE DISTRICT COURT |
| | } | |
| VS. | } | 229ᵀᴴ JUDICIAL DISTRICT |
| | } | |
| KOCH INDUSTRIES, INC. | } | DUVAL COUNTY, TEXAS |

## PLAINTIFF'S RESPONSE TO REQUESTS FOR ADMISSIONS

TO:   DEFENDANT KOCH INDUSTRIES, INC. and its attorney of record, TRAVIS A.
PEARSON, Post Office Box 2256, Wichita, KS 67201

Comes Now RACHEL E. CANALES, Plaintiff in the above-styled and numbered cause and
tenders the attached responses to the Defendant Koch's REQUEST FOR ADMISSIONS.

Respectfully submitted,

RACHEL CANALES
Pro Se
Post Office Box 730
Premont, Texas 78375
Telephone (361) 348-2074
Facsimile: (361) 348-3090

Case 2:00-cv-00012  Document 1   Filed in TXSD on 01/11/2000   Page 89 of 131

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO 1:

You intend to seek damages in excess of $75,000.00 (exclusive of interest and costs) at the time you filed your original petition in state court in this case.

**RESPONSE:** Plaintiff is unable to respond to this request at this time because discovery has not been completed.

### REQUEST FOR ADMISSION NO 2:

You did not intend to seek damages in excess of $75,000.00 (exclusive of interest and costs) at the time you filed your original petition in state court in this case

**RESPONSE:** Denied. Plaintiff intends to recover those damages to which she is entitled. Plaintiff is unable to state the amount until such time as discovery is complete.

### REQUEST FOR ADMISSION NO 3:

The amount of damages claimed by you in this case (Federal or State Court proceedings) is no more than $75,000.00, exclusive of interest and costs.

**RESPONSE:** Plaintiff is unable to respond to this request at this time because discovery has not been completed.

### REQUEST FOR ADMISSION NO 4:

The amount of damages claimed by you in this case (Federal or State Court proceedings) is more than $75,000.00, exclusive of interest and costs

**RESPONSE:** Plaintiff is unable to respond to this request at this time because discovery has not been completed.

### REQUEST FOR ADMISSION NO 5:

The amount of damages claimed by you in this case (Federal or State Court proceedings) will forever be no more than $75,000.00, exclusive of interest and costs.

**RESPONSE:** Denied.  Plaintiff intends to recover those damages to which she is entitled. Plaintiff is unable to state the amount until such time as discovery is complete.

### REQUEST FOR ADMISSION NO 6:

The amount of damages claimed by you in this case (Federal or State Court proceedings) will be more than $75,000.00, exclusive of interest and costs.

**RESPONSE:** Plaintiff is unable to respond to this request at this time because discovery has not been completed.

Case 2:00-cv-00012   Document 1   Filed in TXSD on 01/11/2000   Page 90 of 131

**REQUEST FOR ADMISSION NO 7:**

You irrevocably agree to the entry of an order to this court and /or the Duval County Court, should remand occur, which places an irrevocable cap upon the amount of damages which may be sought by or awarded to you in this case, and that cap shall be set at less than $75,000.00, exclusive of interest and costs.

**RESPONSE:** Denied

**REQUEST FOR ADMISSION NO 8:**

You will not irrevocably agree to the entry of an order to the controlling court which places an irrevocable cap upon the amount of damages which may be sought by or awarded to you in this case, with that cap set at less than $75,000.00, exclusive of interest and costs

**RESPONSE:** Admitted

**REQUEST FOR ADMISSION NO 9:**

You will under no circumstances accept a judgment in this case (Federal or State Court proceeding) in excess of $75,000.00.

**RESPONSE:** Denied

**REQUEST FOR ADMISSION NO 10:**

You would accept a judgment in this case (Federal or State Court proceedings) in excess of $75,000.00 if such a judgment were awarded

**RESPONSE:** Admitted

**REQUEST FOR ADMISSION NO 11:**

You will under no circumstances make a settlement demand for, nor will you accept a settlement in this case (Federal or State Court Proceedings) in excess of $75,000.00 (exclusive of interests and costs)

**RESPONSE:** Plaintiff is unable to respond to this request at this time because discovery has not been completed.

**REQUEST FOR ADMISSION NO 12:**

You would accept a settlement in this case (Federal or State Court Proceedings) in excess of $75,000.00.

Case 2:00-cv-00012   Document 1   Filed in TXSD on 01/11/2000   Page 91 of 131

**RESPONSE:** Admitted

**REQUEST FOR ADMISSION NO 13:**

You do now forever and irrevocably waive all claims for damages in excess of $75,000.00 in this case (Federal or State Court proceedings), exclusive of interest and costs.

**RESPONSE:** Denied

**REQUEST FOR ADMISSION NO 14:**

Please admit that you are claiming as damages in this matter more than $75,000.00, and that you would accept more than $75,000.00 in settlement of your claims in this matter. if offered.

**RESPONSE:** Plaintiff objects to this request because it is multifarious.

**REQUEST FOR ADMISSION NO 15:**

Please admit that you are claiming as damages in this matter less than $75,000.00 and that you forever waive any right you may have to later claim as damages in this matter more than $75,000.00, and that you would not accept $75,000.00 or more either in judgment or settlement of this lawsuit.

**RESPONSE:** Plaintiff objects to this request because it is multifarious.

**REQUEST FOR ADMISSION NO 16:**

Please admit that you are not seeking punitive or exemplary damages in this lawsuit and that you forever waive any rights you may have to amend you Complaint in this lawsuit to include a claim for punitive or exemplary damages.

**RESPONSE:** Denied. Plaintiff intends to recover those damages to which she is entitled. Plaintiff is unable to state the amount until such time as discovery is complete.

Case 2:00-cv-00012   Document 1   Filed in TXSD on 01/11/2000   Page 92 of 131

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing <u>PLAINTIFF'S RESPONSE TO REQUEST FOR ADMISSIONS</u> was th:s __7__ day of June, 1999, forwarded to DEFENDANT KOCH INDUSTRIES, INC. through its attorney of record, TRAVIS A. PEARSON, Post Office Box 2256, Wichita, KS 67201, by U.S. CERTIFIED MAIL, Return Receipt Requested.

RACHEL E. CANALES
Pro Se

CMPDF - www.fesko.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

TERRY A. CANALES AND            §
RACHEL E. CANALES               §
                                §
VS.                             §        C.A. NO._____
                                §
KOCH PIPELINE COMPANY, L.P., KOCH §
PETROLEUM GROUP, KOCH GATHERING §
SYSTEMS, INC., AFC LEASE SERVICE, §
INC., ALLEN YEATS, HECTOR S. LOPEZ §      Removed from the 229th District Court
AND GLORIA LOPEZ                §        of Duval County, Texas

## KOCH DEFENDANTS' INDEX OF DOCUMENTS BEING FILED

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

In connection with the removal of Cause No. DC-99-465 from the 229th District Court of

Duval County, Texas, Defendants, Koch Pipeline Company, L.P., Koch Petroleum Group, L.P.

and Koch Gathering Systems, Inc. ("Koch Defendants"), file this Index of Documents Being

Filed. The specific matters filed are:

A.      Copy of Plaintiff's Original Petition (Complaint);

B.      Copy of Executed Process on Koch Gathering Systems, Inc.;

C.      Copy of Executed Process on Koch Petroleum Group;

D.      Copy of Executed Process on Koch Pipeline Company, L.P.;

E.      Copy of Executed Process on AFC Lease Service, Inc.;

F.      Copy of Executed Process on Allen Yeats;

G.      Copy of Executed Process on Hector S. Lopez and wife, Gloria Lopez;

H.      Koch Defendants' Original Answer;

I.      Respondent's Original Answer of Allen Yeats

J.      Respondent's Original Answer of AFC Lease Service, Inc.

K.      List of all Counsel of Record; and

L.      Certified copy of State Court's Docket Sheet.

        Defendants have also filed a Civil Docket Cover Sheet JS 44c.

                        Respectfully submitted,

                        Travis A. Pearson
                        Kansas Bar No. 16076
                        KOCH INDUSTRIES, INC.
                        P.O. Box 2256
                        Wichita, KS 67201-2256
                        Telephone: (316) 828-8594
                        FAX:  (316) 828-4780
                        and
                        Gene R. Ward
                        State Bar No. 20841500
                        Federal I.D. No. 7645
                        Lynette M. Frederick
                        State Bar No. 12909300
                        Federal I.D. No. 15439
                        HORNBLOWER, MANNING & WARD
                        Professional Corporation
                        P.O. Box 2728
                        Corpus Christi, TX 78403-2728
                        Telephone:  (361) 888-8041
                        FAX:  (361) 888-8222


                        By _Gene Ward for Travis Pearson_
                        ATTORNEYS FOR DEFENDANTS, KOCH PIPELINE
                        COMPANY, L.P., KOCH PETROLEUM GROUP, L.P.
                        AND KOCH GATHERING SYSTEMS, INC.

## CERTIFICATE OF SERVICE

I certify that on January __11__, 2000, a complete and correct copy of **Koch Defendants'** **Index of Documents Being Filed** was served on each party by delivery to the following attorney(s) of record in the manner indicated below:

**VIA CM/RRR # Z 186 823 016**
Mr. John C. Lemon
Lemon & Gonzalez-Lemon, L.L.P.
520 East Second Street
Alice, TX 78332-4810

**VIA CM/RRR # Z 186 823 017**
Mr. Allen Yeats, Pro Se
P.O. Box 776
Sinton, TX 78387

**VIA CM/RRR # Z 186 823 018**
Mr. Allen Yeats
AFC Lease Services, Inc., Pro Se
P.O. Box 776
Sinton, TX 78387

Gene R. Ward

A

FILED AT 3:10 P.

CAUSE NO. _DC-99-465_          DEC 0 9 1999

| | | |
|---|---|---|
| TERRY A. CANALES AND | § | IN THE DISTRICT COURT |
| RACHEL CANALES | § | |
| | § | |
| VS. | § | 229TH JUDICIAL DISTRICT |
| | § | |
| KOCH PIPELINE COMPANY L. P., | § | |
| KOCH PETROLEUM GROUP, KOCH | § | |
| GATHERING SYSTEMS, INC.,  AFC | § | |
| LEASE SERVICE, INC., ALLEN YEATS, | § | |
| HECTOR S. LOPEZ & GLORIA LOPEZ | § | DUVAL COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **TERRY A. CANALES and RACHEL E. CANALES,** hereinafter

referred to as "Plaintiffs" whose address is two and one-half (2-1/2) miles Northeast of the City

of Premont, Jim Wells County, Texas, off County Road 421.  Their mailing address is Post

Office Box 730, Premont, Texas 78375.  The Plaintiffs complain of Defendants, and would

show the court the following, to wit:

I.

**KOCH PIPELINE COMPANY, L.P.,** hereinafter referred to as "Defendant Koch

Pipeline," is a Delaware Corporation, with principle business offices in Texas, and authorized to

do business in Texas.  It may be cited to appear by serving its registered agent is C. T.

Corporation Systems, 811 Dallas Ave., Houston, Texas 77002.

## II.

**KOCH PETROLEUM GROUP,** hereinafter referred to as "Defendant Koch Petroleum," is a Delaware Corporation, with principle business offices in Texas and authorized to do business in Texas.  It may be cited to appear by serving its registered agent is C. T. Corporation Systems, 350 North St. Paul Street, Dallas, Texas 78201.

## III.

**KOCH GATHERING SYSTEMS, INC.,** hereinafter referred to as "Defendant Koch Gathering," is a Texas business entity.  It may be cited to appear by serving its business manager in charge of business at 8606 Interstate Highway No. 37, Corpus Christi, Texas 78409.

## IV.

**AFC Lease Service, Inc.,** hereinafter referred to as "Defendant AFC," is a corporation with its principle business offices in Texas.  It may be cited to appear by serving its registered agent is Allen Yeats, 1200 Railroad, Sinton, Texas 78387.

## V.

**ALLEN YEATS,** hereinafter referred to as "Defendant Yeats," is an individual, who may be served with process at 1200 Railroad, Sinton, Texas 78387.

## VI.

**HECTOR S. LOPEZ** and wife, **GLORIA LOPEZ** are necessary parties to this suit for the reason that they are joint owners of the land that is the subject of this suit.

## VII.

**HECTOR S. LOPEZ** and wife, **GLORIA LOPEZ** are residents of Jim Wells County, Texas, and can both be served by mail at Post Office Bos 2226, Alice, Jim Wells County, Texas.

VIII.

The Plaintiffs, together with **HECTOR S. LOPEZ** and wife, **GLORIA LOPEZ** are joint owners, as tenants in common, of approximately three thousand two hundred (3,200) acres of land in Duval County, Texas, situated approximately eight (8) miles North of the City of Benavides, Duval County, Texas. The above-referenced acreage is hereinafter referred to as the "property."

IX.

That the Defendants have entered upon the proper and installed a pipeline claiming an easement on the property for such purposes.

X.

That the Defendants have caused damages to the surface of the land.

XI.

That the Plaintiffs believe and have reason to believe that the Defendants do not have a valid easement or rights across the property and are therefore trespassing.

XII.

That as a result of Defendants' conduct the Plaintiffs have sustained damages in an amount within the jurisdiction of this Court.

XIII.

That Defendants' claimed easement constitutes a cloud on Plaintiffs' title.

XVIII.

Defendants' have potentially caused environmental damages to Plaintiffs' property.

## Prayer

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiffs pray that the Defendants be cited to appear and answer as required by law; and, that upon final hearing, the Plaintiffs' have judgment of the court:

1.      For damages;

2.      For pre-judgment and post-judgment interest;

3.      Enjoining the Defendants from trespassing;

4.      Removing the cloud to Plaintiffs' title; and

For such other and further relief, both general and special, at law or in equity, to which the Plaintiffs may show themselves justly entitled.

Respectfully submitted,

Lemon & Gonzalez-Lemon L.L.P.
520 E. Second Street
Alice, Texas 78332
Telephone: 361/664-0011
Facsimile: 361/664-0013

By:

John C. Lemon
TX Bar #: 00789449

**B**

CVPDF – www.fastio.com

# ORIGINAL

CIT.PS.CM
CLERK OF THE COURT
MR. RICHARD M. BARTON
P.O. DRAWER 428
SAN DIEGO, TEXAS 78384

ATTORNEY FOR PLAINTIFF
MR . JOHN C. LEMON
520 E. SECOND STREET
ALICE, TEXAS 78332

## THE STATE OF TEXAS

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

## TO:  KOCH GATHERING SYSTEMS, INC., BY SERVING ITS BUSINESS MANAGER IN CHARGE, 8606 INTERSTATE HIGHWAY NO. 37, CORPUS CHRISTI, TEXAS 78409.

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 229th Judicial District Court of Duval County, Texas at the Court House of said County in San Diego, Texas.

Said Petition was filed in said court on the 9th Day of December, A. D., 1999 in this case, numbered **DC-99-465** on the docket of said court, and styled
**TERRY A. CANALES AND RACHEL CANALES, Plaintiff's**
**VS.**
**KOCH PIPELINE COMPANY L.P., KOCH PETROLEUM GROUP, KOCH GATHERING SYSTEMS, INC., AFC LEASE SERVICE, INC., ALLEN YEATS, HECTOR S. LOPEZ & GLORIA LOPEZ, Defendants**

The nature of said Petition is fully shown by a true and correct copy of the Plaintiff's Original Petition, accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, make due return as the law directs.

Issued and given under my hand and seal of said Court at San Diego, Texas this the 10th day of December, A. D., 1999.

Attest Mr. Richard M. Barton, Clerk District Court, Duval County, Texas

By: _____ , Deputy.

## CERTIFICATE OF DELIVERY BY MAIL

I hereby certify that on the 10th day of December ,1999 at 2:30 o'clock P.M., I mailed
TO: KOCH GATHERING SYSTEMS, INC., BY SERVING ITS BUSINESS MANAGER, 8606 INTERSTATE HIGHWAY NO. 37, CORPUS CHRITSI, TEXAS 78409.
return receipt requested, a true copy of this citation with a copy of the petition attached thereto.
Mr. Richard M. Barton, Clerk
CERTIFIED MAIL—RESTRICTED DELIVERY # **P 502-658-497**

By: _____ , Deputy

### CLERK'S RETURN
FILED THIS THE 15th DAY OF _____ , A. D. 1999.
MR. RICHARD M. BARTON, CLERK
DISTRICT COURT
DUVAL COUNTY, TEXAS
BY: _____ , DEPUTY

DATE OF DEFENDANT'S SIGNATURE: _____ .

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☑ Restricted Delivery

Consult postmaster for fee.

| 3. Article Addressed to: | CAUSE NO. DC-99-465 | 4a. Article Number |
| --- | --- | --- |
| *KOCH GATHERING SYSTEMS, INC* | | P 502 658-497 |
| *BUSINESS MANAGER IN CHARGE* | | 4b. Service Type |
| *8606 INTERSTATE HIGHWAY NO. 37* | | ☐ Registered    ☑ Certified |
| *CORPUS CHRISTI, TEXAS 78409* | | ☐ Express Mail    ☐ Insured |
| | | ☐ Return Receipt for Merchandise   ☐ COD |

7. Date of Delivery

*12-13-99*

5. Received By: (Print Name)

*Dettoes*

8. Addressee's Address (Only if requested and fee is paid)

6. Signature: (Addressee or Agent)

X

PS Form 3811, December 1994          Domestic Return Receipt

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Print your name, address, and ZIP Code in this box ●

RICHARD M. BARTON
DUVAL COUNTY DISTRICT CLERK
P. O. DRAWER 428
SAN DIEGO, TEXAS 78384-0428

FILED AT ___ O'CLOCK ___ M

DEC 15 1999

R. BARTON, CLERK
DISTRICT COURT, DUVAL COUNTY, TEXAS
By _____ Deputy

C

# ORIGINAL

CIT.PS.CM
**CLERK OF THE COURT**
MR. RICHARD M. BARTON
P.O. DRAWER 428
SAN DIEGO, TEXAS 78384

**ATTORNEY FOR PLAINTIFF**
MR . JOHN C. LEMON
520 E. SECOND STREET
ALICE, TEXAS 78332

## THE STATE OF TEXAS

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

**TO:  KOCH PETROLEUM GROUP, BY SERVING ITS REGISTERED AGENT, C.T. CORPORATION SYSTEMS, 350 NORTH ST. PAUL STREET, DALLAS, TEXAS 78201.**

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 229th Judicial District Court of Duval County, Texas at the Court House of said County in San Diego, Texas.

Said Petition was filed in said court on the 9th Day of December, A. D., 1999 in this case, numbered **DC-99-465** on the docket of said court, and styled

**TERRY A. CANALES AND RACHEL CANALES, Plaintiff's**
**VS.**
**KOCH PIPELINE COMPANY L.P., KOCH PETROLEUM GROUP, KOCH GATHERING SYSTEMS, INC., AFC LEASE SERVICE, INC., ALLEN YEATS, HECTOR S. LOPEZ & GLORIA LOPEZ, Defendants**

The nature of said Petition is fully shown by a true and correct copy of the Plaintiff's Original Petition, accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, make due return as the law directs.

Issued and given under my hand and seal of said Court at San Diego, Texas this the 10th day of December, A. D., 1999.

Attest Mr. Richard M. Barton, Clerk District Court, Duval County, Texas

By: _____, Deputy.

## CERTIFICATE OF DELIVERY BY MAIL

I hereby certify that on the 10th day of December ,1999 at 2:30 o'clock P.M., I mailed
TO: KOCH PETROLEUM GROUP, C.T. CORPORATION SYSTEMS, AGENT, 350 NORTH ST. PAUL STREET, DALLAS, TEXAS 78201.
return receipt requested, a true copy of this citation with a copy of the petition attached thereto.
Mr. Richard M. Barton, Clerk
CERTIFIED MAIL—RESTRICTED DELIVERY # **P 502-658-496**

By: _____, Deputy

**CLERK'S RETURN**
FILED THIS THE ___ DAY OF _____ A. D. 1999.
MR. RICHARD M. BARTON, CLERK
DISTRICT COURT
DUVAL COUNTY, TEXAS
BY: _____, DEPUTY

DATE OF DEFENDANT'S SIGNATURE: _____

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☒ Restricted Delivery

Consult postmaster for fee.

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

| 3. Article Addressed to: | 4a. Article Number |
|---|---|
| CAUSE NO. DC-99-465 | P 502 658-496 |

*KOCH PETROLEUM GROUP*
*CT CORPORATION SYSTEMS, AGENT*
*350 NORTH ST. PAUL STREET*
*DALLAS, TEXAS 78201*

4b. Service Type

☐ Registered          ☒ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery  12-13

5. Received By: *(Print Name)*

8. Addressee's Address *(Only if requested and fee is paid)*

6. Signature: *(Addressee or Agent)*
X   CT CORP SYSTEMS

PS Form **3811**, December 1994          102595-97-B-0179   **Domestic Return Receipt**

---

UNITED STATES POSTAL SERVICE

| First-Class Mail |
| Postage & Fees Paid |
| USPS |
| Permit No. G-10 |

● Print your name, address, and ZIP Code in this box ●

FILED AT 9:00 O'CLOCK A M

DEC 16 1999

R BARTON, CLERK
DISTRICT COURT, DUVAL COUNTY TEXAS
Tomasa E. Salazar

*RICHARD M BARTON*
*DISTRICT CLERK*
*P.O. DRAWER 428*
*SAN DIEGO, TEXAS 78384*

D

CutePDF - www.fastio.com

ORIGINAL

CIT.PS.CM
CLERK OF THE COURT
MR. RICHARD M. BARTON
P.O. DRAWER 428
SAN DIEGO, TEXAS 78384

ATTORNEY FOR PLAINTIFF
MR . JOHN C. LEMON
520 E. SECOND STREET
ALICE, TEXAS 78332

## THE STATE OF TEXAS

**NOTICE TO DEFENDANT**: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

## TO: KOCH PIPELINE COMPANY, L.P., BY SERVING ITS REGISTERED AGENT, C.T. CORPORATION SYSTEMS, 811 DALLAS AVE., HOUSTON, TEXAS 77002.

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 229th Judicial District Court of Duval County, Texas at the Court House of said County in San Diego, Texas.

Said Petition was filed in said court on the 9th Day of December, A. D., 1999 in this case, numbered **DC-99-465** on the docket of said court, and styled
**TERRY A. CANALES AND RACHEL CANALES, Plaintiff's**
**VS.**
**KOCH PIPELINE COMPANY L.P., KOCH PETROLEUM GROUP, KOCH GATHERING SYSTEMS, INC., AFC LEASE SERVICE, INC., ALLEN YEATS, HECTOR S. LOPEZ & GLORIA LOPEZ, Defendants**

The nature of said Petition is fully shown by a true and correct copy of the Plaintiff's Original Petition, accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, make due return as the law directs.

Issued and given under my hand and seal of said Court at San Diego, Texas this the 10TH day of December, A. D., 1999.

Attest Mr. Richard M. Barton, Clerk District Court, Duval County, Texas

By: _____ , Deputy.

## CERTIFICATE OF DELIVERY BY MAIL

I hereby certify that on the 10th day of December ,1999 at 2:30 o'clock P.M., I mailed
TO: KOCH PIPELINE COMPANY, LP, C.T. CORPORATIONS SYSTEMS, AGENT, 811 DALLAS AVE., HOUSTON, TEXAS 77002. return receipt requested, a true copy of this citation with a copy of the petition attached thereto.
Mr. Richard M. Barton, Clerk
CERTIFIED MAIL—RESTRICTED DELIVERY # **P 502-658-530**

By: _____ , Deputy

**CLERK'S RETURN**
FILED THIS THE ____ DAY OF _____ A. D. 1999.
MR. RICHARD M. BARTON, CLERK
DISTRICT COURT
DUVAL COUNTY, TEXAS
BY: _____ , DEPUTY

DATE OF DEFENDANT'S SIGNATURE: _____

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *"Return Receipt Requested"* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☑ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

CAUSE NO. DC-99-465

KOCH PIPELINE COMPANY, LP
CT CORPORATION SYSTEMS, AGENT
811 DALLAS AVE.
HOUSTON, TEXAS 77002

4a. Article Number
P 502 658-530

4b. Service Type

| | |
|---|---|
| ☐ Registered | ☑ Certified |
| ☐ Express Mail | ☐ Insured |
| ☐ Return Receipt for Merchandise | ☐ COD |

7. Date of Delivery
12/13/99

5. Received By: (Print Name)
LeeAnn Cis

8. Addressee's Address (Only if requested and fee is paid)

6. Signature: (Addressee or Agent)
X

PS Form **3811**, December 1994

Domestic Return Receipt

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Print your name, address, and ZIP Code in this box ●

RICHARD M. BARTON
DUVAL COUNTY DISTRICT CLERK
P. O. DRAWER 428
SAN DIEGO, TEXAS 78384-0428

FILED AT 9:20 O'CLOCK A
DEC 17 1999

E

CutePDF - www.fastio.com

# ORIGINAL

CIT.PS.CM
CLERK OF THE COURT
MR. RICHARD M. BARTON
P.O. DRAWER 428
SAN DIEGO, TEXAS 78384

ATTORNEY FOR PLAINTIFF
MR . JOHN C. LEMON
520 E. SECOND STREET
ALICE, TEXAS 78332

## THE STATE OF TEXAS

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

**TO: AFC LEASE SERVICE, INC., BY SERVING ITS REGISTERED AGENT, ALLEN YEATS, 1200 RAILROAD, SINTON, TEXAS 78387.**

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 229th Judicial District Court of Duval County, Texas at the Court House of said County in San Diego, Texas.

Said Petition was filed in said court on the 9th Day of December, A. D., 1999 in this case, numbered **DC-99-465** on the docket of said court, and styled
**TERRY A. CANALES AND RACHEL CANALES, Plaintiff's**
**VS.**
**KOCH PIPELINE COMPANY L.P., KOCH PETROLEUM GROUP, KOCH GATHERING SYSTEMS, INC., AFC LEASE SERVICE, INC., ALLEN YEATS, HECTOR S. LOPEZ & GLORIA LOPEZ, Defendants**

The nature of said Petition is fully shown by a true and correct copy of the Plaintiff's Original Petition, accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, make due return as the law directs.

Issued and given under my hand and seal of said Court at San Diego, Texas this the 10th day of December, A. D., 1999.

Attest Mr. Richard M. Barton, Clerk District Court, Duval County, Texas

By: _____, Deputy.

## CERTIFICATE OF DELIVERY BY MAIL

I hereby certify that on the 10th day of December ,1999 at 2:30 o'clock P.M., I mailed
TO: AFC LEASE SERVICE, INC., BY SERVING ITS REGISTERED AGENT, ALLEN YEATS, 1200 RAILROAD, SINTON, TEXAS 78387.
return receipt requested, a true copy of this citation with a copy of the petition attached thereto.
Mr. Richard M. Barton, Clerk
CERTIFIED MAIL—RESTRICTED DELIVERY # **P 502-658-498**

By: _____, Deputy

### CLERK'S RETURN
FILED THIS THE _14_ DAY OF _Dec_ A. D. 1999.
MR. RICHARD M. BARTON, CLERK
DISTRICT COURT
DUVAL COUNTY, TEXAS
BY: _____ DEPUTY

DATE OF DEFENDANT'S SIGNATURE: _12-13-99_

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☑ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to: **CAUSE NO. DC-99-465**

*AFC LEASE SERVICE, INC., BY SERVING ITS*
*REGISTERED AGENT, ALLEN YEATS*
*1200 RAILROAD*
*SINTON, TEXAS  78387*

4a. Article Number  P 502 658-498

4b. Service Type
| | |
|---|---|
| ☐ Registered | ☑ Certified |
| ☐ Express Mail | ☐ Insured |
| ☐ Return Receipt for Merchandise | ☐ COD |

7. Date of Delivery  12-13-99

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X *Allen Yeats*

8. Addressee's Address (Only if requested and fee is paid)

PS Form **3811**, December 1994

Domestic Return Receipt

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

UNITED STATES POSTAL SERVICE

PM

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Print your name, address, and ZIP Code in this box ●

RICHARD M. BARTON
DUVAL COUNTY DISTRICT CLERK
P. O. DRAWER 428
SAN DIEGO, TEXAS 78384-0428

DEC 1 4 1999

DISTRICT COURT DUVAL COUNTY TEXAS
R. BARTON, CLERK
BY
DEPUTY

FILED AT O'CLOCK

F

CVISPDF – www.fastio.com

# ORIGINAL

CIT.PS.CM
CLERK OF THE COURT
MR. RICHARD M. BARTON
P.O. DRAWER 428
SAN DIEGO, TEXAS 78384

ATTORNEY FOR PLAINTIFF
MR . JOHN C. LEMON
520 E. SECOND STREET
ALICE, TEXAS 78332

## THE STATE OF TEXAS

**NOTICE TO DEFENDANT**: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

## TO:  ALLEN YEATS, 1200 RAILROAD, SINTON, TEXAS 78387.

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 229th Judicial District Court of Duval County, Texas at the Court House of said County in San Diego, Texas.

Said Petition was filed in said court on the 9th Day of December, A. D., 1999 in this case, numbered DC-99-465 on the docket of said court, and styled
**TERRY A. CANALES AND RACHEL CANALES, Plaintiff's**
**VS.**
**KOCH PIPELINE COMPANY L.P., KOCH PETROLEUM GROUP, KOCH GATHERING SYSTEMS, INC., AFC LEASE SERVICE, INC., ALLEN YEATS, HECTOR S. LOPEZ & GLORIA LOPEZ, Defendants**

The nature of said Petition is fully shown by a true and correct copy of the Plaintiff's Original Petition, accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, make due return as the law directs.

Issued and given under my hand and seal of said Court at San Diego, Texas this the 10 day of December, A. D., 1999.

Attest Mr. Richard M. Barton, Clerk District Court, Duval County, Texas

By: _____, Deputy.

## CERTIFICATE OF DELIVERY BY MAIL

I hereby certify that on the 10th day of December ,1999 at 2:30 o'clock P.M., I mailed
TO: ALLEN YEATS, 1200 RAILROAD, SINTON, TEXAS 78387.
return receipt requested, a true copy of this citation with a copy of the petition attached thereto.
Mr. Richard M. Barton, Clerk
CERTIFIED MAIL—RESTRICTED DELIVERY # **P 502-658-529**

By: _____, Deputy

FILED THIS THE _14_ DAY OF _Dec_, A. D. 1999.
MR. RICHARD M. BARTON, CLERK
DISTRICT COURT
DUVAL COUNTY, TEXAS

**CLERK'S RETURN**

BY: _____ DEPUTY

DATE OF DEFENDANT'S SIGNATURE: _12-13-99_

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☑ Restricted Delivery

Consult postmaster for fee.

| 3. Article Addressed to: | CAUSE NO. DC-99-465 | 4a. Article Number | P 502 658-529 |
|---|---|---|---|

*ALLEN YEATS*
*1200 RAILROAD*
*SINTON, TEXAS 78387*

4b. Service Type

☐ Registered          ☑ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery  12-13-99

5. Received By: *(Print Name)*

8. Addressee's Address *(Only if requested and fee is paid)*

6. Signature: *(Addressee or Agent)*
X *Allen Yeats*

PS Form **3811,** December 1994                    Domestic Return Receipt

*Is your RETURN ADDRESS completed on the reverse side?*

*Thank you for using Return Receipt Service.*

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Print your name, address, and ZIP Code in this box ●

RICHARD M. BARTON
DUVAL COUNTY DISTRICT CLERK
P. O. DRAWER 428
SAN DIEGO, TEXAS 78384-0428

DISTRICT COURT, DUVAL COUNTY TEXAS
R. BARTON, CLERK
BY _____ DEPUTY

DEC 14 1999

FILED AT 2:00 O'CLOCK __ M

G

# ORIGINAL

CIT.PS.CM
**CLERK OF THE COURT**                                        **ATTORNEY FOR PLAINTIFF**
MR. RICHARD M. BARTON                                          MR . JOHN C. LEMON
P.O. DRAWER 428                                                520 E. SECOND STREET
SAN DIEGO, TEXAS 78384                                         ALICE, TEXAS 78332

## THE STATE OF TEXAS

 **NOTICE TO DEFENDANT**: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

## TO: HECTOR S. LOPEZ AND WIFE, GLORIA LOPEZ, POST OFFICE BOX 2226, ALICE, JIM WELLS COUNTY, TEXAS 78333.

Defendant, Greeting:
 You are hereby commanded to appear by filing a written answer to Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 229th Judicial District Court of Duval County, Texas at the Court House of said County in San Diego, Texas.
 Said Petition was filed in said court on the 9th Day of December, A. D., 1999 in this case, numbered DC-99-465 on the docket of said court, and styled
**TERRY A. CANALES AND RACHEL CANALES, Plaintiff's**
**VS.**
**KOCH PIPELINE COMPANY L.P., KOCH PETROLEUM GROUP, KOCH GATHERING SYSTEMS, INC., AFC LEASE SERVICE, INC., ALLEN YEATS, HECTOR S. LOPEZ & GLORIA LOPEZ, Defendants**

 The nature of said Petition is fully shown by a true and correct copy of the Plaintiff's Original Petition, accompanying this citation and made a part hereof.
 The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, make due return as the law directs.
 Issued and given under my hand and seal of said Court at San Diego, Texas this the 10th day of December, A. D., 1999.
Attest Mr. Richard M. Barton, Clerk District Court, Duval County, Texas
By: _Rachel D. Vela_ , Deputy.

## CERTIFICATE OF DELIVERY BY MAIL

I hereby certify that on the 10th day of December ,1999 at 2:30 o'clock P.M., I mailed
TO: HECTOR S. LOPEZ AND WIFE, GLORIA LOPEZ, P.O. BOX 2226, ALICE, JIM WELLS COUNTY, TEXAS 78333.
return receipt requested, a true copy of this citation with a copy of the petition attached thereto.
Mr. Richard M. Barton, Clerk
**CERTIFIED MAIL—RESTRICTED DELIVERY # P 502-658-532**

By: _Rachel D. Vela_ , Deputy

**CLERK'S RETURN**
FILED THIS THE ___13___ DAY OF ___Dec___ A. D. 1999.
MR. RICHARD M. BARTON, CLERK
DISTRICT COURT
DUVAL COUNTY, TEXAS
BY: _Tomasita C. Salinas_ , DEPUTY
DATE OF DEFENDANT'S SIGNATURE: ___12-13-99___

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☑ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:    CAUSE NO. DC-99-465

*HECTOR S. LOPEZ AND WIFE,*
*GLORIA LOPEZ*
*POST OFFICE BOX 2226*
*ALICE, JIM WELLS, TEXAS 78333*

4a. Article Number    P 502 658-532

4b. Service Type
- ☐ Registered
- ☐ Express Mail
- ☐ Return Receipt for Merchandise
- ☑ Certified
- ☐ Insured
- ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)

8. Addressee's Address (Only if requested and fee is paid)

PS Form **3811**, December 1994    Domestic Return Receipt

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Print your name, address, and ZIP Code in this box ●

DEC 13 1999

RICHARD M. BARTON
DUVAL COUNTY DISTRICT CLERK
P. O. DRAWER 428
SAN DIEGO, TEXAS 78384-0428

H

CVisPDF – www.fastio.com

FILED AT ___9:00___ O'CLOCK ___A___ M.

JAN 0 3 2000

R. BARTON, C.
DISTRICT COURT, DUV/
BY _____

CAUSE NO. DC-99-465

| | | |
|---|---|---|
| TERRY A. CANALES AND<br>RACHEL CANALES | §<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§ | 229TH JUDICIAL DISTRICT |
| KOCH PIPELINE COMPANY, L.P.,<br>ET AL. | §<br>§<br>§ | DUVAL COUNTY, TEXAS |

## KOCH DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF THE COURT:

Koch Pipeline Company, L.P., Koch Petroleum Group, L.P., erroneously named by Plaintiffs as Koch Petroleum Group, and Koch Gathering Systems, Inc., (collectively called "Koch defendants"), Defendants, file this Original Answer to Plaintiffs' Original Petition and would show the Court the following:

Without waiving any objections and while expressly reserving all jurisdictional rights, Koch defendants, exercising their legal rights under customary practice and the Texas Rules of Civil Procedure, deny each and every, all and singular, the material allegations of Plaintiffs' causes of action and demand strict proof of the allegations in accordance with Texas Rule of Civil Procedure 92.

WHEREFORE, Defendants, Koch Pipeline Company, L.P., Koch Petroleum Group, L.P., erroneously named by Plaintiffs as Koch Petroleum Group, and Koch Gathering Systems, Inc., pray for and request Judgment of the Court, upon final trial hereof, that Plaintiffs, Terry A. Canales and Rachel Canales, take nothing by this suit, that Defendants go hence with costs and

**Koch Defendants' Original Answer - Page 1**
H:\office\wpwin\wpdocs\TRIAL\KOCH\Canales-#3\Pldgs\ORIG-ANS.wpd

such further relief in law or in equity, both general and special, to which these Defendants may

be entitled.

Respectfully submitted,

Travis A. Pearson
Kansas Bar No. 16076
KOCH INDUSTRIES, INC.
P.O. Box 2256
Wichita, KS 67201
Telephone: (316) 828-8594
FAX: (316) 828-4780

and

Gene R. Ward
State Bar No. 20841500
Lynette M. Frederick
State Bar No. 12909300
HORNBLOWER, MANNING & WARD
Professional Corporation
P.O. Box 2728
Corpus Christi, TX 78403-2728
Telephone: (361) 888-8041
FAX: (361) 888-8222

By *Travis A. Pearson* w/ permission
ATTORNEYS FOR DEFENDANTS, KOCH PIPELINE
COMPANY, L.P., KOCH PETROLEUM GROUP, L.P.
AND KOCH GATHERING SYSTEMS, INC.

*Lynette M. Frederick*

CutePDF - www.tavius.com

## CERTIFICATE OF SERVICE

I certify that on December **30**, 1999, a complete and correct copy of **Koch Defendants' Original Answer** was served on each party by delivery to the following attorney(s) of record in the manner indicated below:

**VIA Hand Delivery:**
Mr. John C. Lemon
Lemon & Gonzalez-Lemon, L.L.P.
520 East Second Street
Alice, TX 78332-4810
FAX: (361) 664-0013

Lynette M. Frederick

I

CVisPDF – www.fastio.com

Case 2:00-cv-00012   Document 1   Filed in TXSD on 01/11/2000   Page 124 of 131

CAUSE NO. DC-99-465

| | | |
|---|---|---|
| TERRY A. CANALES AND | § | IN THE DISTRICT COURT |
| RACHEL CANALES | § | |
| | § | |
| VS. | § | 229th JUDICIAL DISTRICT |
| | § | |
| ALLEN YEATS | § | DUVAL COUNTY, TEXAS |

## RESPONDENT'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes, **ALLEN YEATS** the Respondent in the above styled and numbered cause, and makes and files this Respondent's Original Answer, and would respectfully represent and show unto the Court as follows:

Respondent denies all and singular the allegations contained in Petitioner's Petition and demand strict proof thereof.

WHEREFORE, Respondent prays that Petitioner take nothing by this suit and that Respondent have judgment of the Court.

*Allen Yeats*

Allen Yeats
Address: Post Office Box 776
         Sinton, Texas 78387
Phone:   (361) 364-2547

J

Case 2:00-cv-00012   Document 1   Filed in TXSD on 01/11/2000   Page 126 of 131

CAUSE NO. DC-99-465

| | | |
|---|---|---|
| TERRY A. CANALES AND | § | IN THE DISTRICT COURT |
| RACHEL CANALES | § | |
| | § | |
| VS. | § | 229th JUDICIAL DISTRICT |
| | § | |
| AFC LEASE SERVICE, INC. | § | DUVAL COUNTY, TEXAS |

## RESPONDENT'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes, **AFC LEASE SERVICE, INC.** the Respondent in the above styled and numbered cause,

and makes and files this Respondent's Original Answer, and would respectfully represent and

show unto the Court as follows:

Respondent denies all and singular the allegations contained in Petitioner's Petition and

demand strict proof thereof.

WHEREFORE, Respondent prays that Petitioner take nothing by this suit and that

Respondent have judgment of the Court.

AFC Lease Service, Inc.
By: Allen Yeats
Address: Post Office Box 776
          Sinton, Texas 78387
Phone:   (361) 364-2547

K

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TERRY A. CANALES AND | § | |
| RACHEL E. CANALES | § | |
| | § | |
| VS. | § | C.A. NO._____ |
| | § | |
| KOCH PIPELINE COMPANY, L.P., KOCH | § | |
| PETROLEUM GROUP, KOCH GATHERING | § | |
| SYSTEMS, INC., AFC LEASE SERVICE, | § | |
| INC., ALLEN YEATS, HECTOR S. LOPEZ | § | Removed from the 229th District Court |
| AND GLORIA LOPEZ | § | of Duval County, Texas |

## LIST OF ALL COUNSEL OF RECORD

Travis A. Pearson
Kansas Bar No. 16076
Attorney-in-Charge
KOCH INDUSTRIES, INC.
P.O. Box 2256
Wichita, KS 67201-2256
FAX: (316) 828-4780
Telephone: (316) 828-8594
and
Gene R. Ward
State Bar No. 20841500
Federal I.D. No. 7645
Lynette M. Frederick
State Bar No. 12909300
Federal I.D. No. 15439
Local Counsel
HORNBLOWER, MANNING & WARD
Professional Corporation
P.O. Box 2728
Corpus Christi, TX 78403-2728
FAX: (361) 888-8222
Telephone: (361) 888-8041

ATTORNEYS FOR DEFENDANTS, KOCH PIPELINE COMPANY,
L.P., KOCH PETROLEUM GROUP, L.P. AND KOCH GATHERING
SYSTEMS, INC.

John C. Lemon
State Bar No. 00789449
Lemon & Gonzalez-Lemon, L.L.P.
520 East Second Street
Alice, TX 78332-4810
FAX: (361) 664-0013
Telephone: (361) 664-0011

ATTORNEY FOR PLAINTIFFS, TERRY A. CANALES
AND RACHEL CANALES

Allen Yeats
P.O. Box 776
Sinton, TX 78387
Telephone: (361) 364-2547

PRO SE FOR DEFENDANTS, ALLEN YEATS AND
AFC LEASE SERVICE, INC.

L

# CIVIL DOCKET

**CASE NO. DC-99-465**

| NUMBER OF CASE | NAMES OF PARTIES | ATTORNEYS | Kind of Action and Party Demanding Jury | DATE OF FILING |
|---|---|---|---|---|

DC-99-465

TERRY A. CANALES AND
RACHEL CANALES

vs.

KOCH PIPELINE COMPANY L.P.,
KOCH PETROLEUM GROUP, KOCH
GATHERING SYSTEMS, INC., AFC
LEASE SERVICE, INC., ALLEN YEATS,
HECTOR S. LOPEZ & GLORIA LOPEZ

JOHN C LEMON   Plf.

Dft.

REMOVING CLOUD FROM TITLE (10)

DATE OF FILING: Mo. 12  Day 09  Year 99

Jury Fee.
Paid by
Jury No.
PROCESS

| FEE BOOK | | MINUTE BOOK | |
|---|---|---|---|
| Vol. | Page | Vol. | Page |

## ORDERS OF COURT

| DATE OF ORDERS Month Day Year | Was Stenographer Used? | ORDERS OF COURT |
|---|---|---|
| 12 9 99 | | Plfs filed Original petition; citations issued to all named Δs |
| 12 14 99 | | Δ AFC served on 12-13-99 by restricted delivery mail, disposed for by Allen Yeats; Δ Allen Yeats served on 12-13-99 |
| 12 15 99 | | Δ Koch Gathering Systems served on 12-13-99 by restricted delivery mail |
| 12 16 99 | | Δ Koch Petroleum served on 12-13-99 by R/D mail |
| 12 13 99 | | Δ Hector S. Lopez & wife served on 12-11-99 by R/D mail |
| 12 17 99 | | Δ Koch Pipeline Co. served on 12-13-99 by R/D mail |

A True Copy of the original, I certify
this 29th day of Dec , 19 99
R. Barton
District Clerk
Nueces County, Texas
By Guadalupe Garcia , Deputy.